******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AMELIA WOOD *v.* DAVID WOOD
(AC 38090)

Lavine, Alvord and Pellegrino, Js.

*Argued December 5, 2016—officially released February 14, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Ficeto, J.)

*James H. Lee*, for the appellant (plaintiff).

*William J. Forbes*, with whom was *Cara C. Pavalock*,
for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Amelia Wood, appeals from the financial orders relating to the judgment of the trial court dissolving her marriage to the defendant, David Wood. On appeal, the plaintiff claims that the court abused its discretion by (1) awarding the parties' joint securities account, in its entirety, to the defendant, (2) failing to treat the defendant's unexercised stock options as available income when awarding alimony or, alternatively, as marital property when distributing property, and (3) failing to distribute a portion of the defendant's pension annuity retirement income to her. We affirm the judgment of the trial court.

The court found the following facts. At the time of the dissolution of their fourteen year marriage, the defendant was sixty-six years old and retired and the plaintiff was fifty-two years old and in good health. The parties met through a chat room in 1999 while the defendant was living in Singapore and the plaintiff in Malaysia. At that time, the plaintiff was married but estranged from her spouse. The plaintiff testified that while in Malaysia she co-owned a business with her then husband, which she characterized as a successful hotel and resort marketing business. The plaintiff testified that when she and the defendant decided to marry, the defendant urged her to get a " 'quick' " divorce so that they could leave Malaysia together and settle in the United States. She claims that they both understood that a quick divorce would mean that she would make no claim to the marital estate she shared with her then husband, but she had agreed to a quick divorce because the defendant assured her that he would always provide for her. As a result, the plaintiff requested that the court award her additional assets representing her allegedly forgone portion of the prior marital estate.

The parties were married in 2001 in Bloomfield. During the marriage, the plaintiff filed for divorce on two prior occasions but withdrew each prior action. The parties each blame the other for the difficulties encountered in their relationship. There are no children of the marriage, although both parties have adult children from previous relationships. The defendant has always financially supported his children from his two prior marriages. The plaintiff has not worked outside the home since she married the defendant. She alleged that she managed a crew of ten employees at the business she co-owned in Malaysia prior to her marriage to the defendant. After completing a paralegal course in 2005, she obtained the related certificate, but she never sought employment in that or any other field during her marriage to the defendant. During the pendency of this dissolution action, the plaintiff removed a total of $120,000 from the parties' bank accounts, funds for which she has provided no accounting.[1] The court found that the plaintiff is able to seek and obtain gainful

employment. The plaintiff also has a UBS IRA in the amount of $25,100, an Employee Provident Fund in the amount of $20,000, and approximately $23,400 in bank accounts.

The defendant retired from Otis Elevator after a thirty-five year career at the end of 2012. Thus, the parties were married during the last eleven years of his employment. He receives $412 in social security benefits and $1900 in pension annuity retirement income for a total gross weekly retirement income amount of $2166.[2] His weekly net income is $1803. He has a PMP IRA valued at $312,541 and a Dividend G IRA valued at $466,253. He has $970,819 in unexercised stock options and the parties' joint UBS Managed Equity account valued at $965,645. On his financial affidavit, the defendant also listed unvested shares of UTC stock, which the court valued at $29,800, and bank accounts worth $23,000. Prior to the marriage, the defendant had $1.1 million in assets. He purchased the parties' marital home at 19 Stratford Park in Bloomfield, liquidating $110,000 of those premarital assets for the deposit. The house has a fair market value of $275,000 and a mortgage of approximately $43,000.

The court made the following relevant financial awards. The plaintiff is to receive alimony in the amount of $540 per week until her sixty-fifth birthday, which was a nonmodifiable period. The plaintiff retained all benefit and interest in her premarital bank accounts and retirement assets. She retained her jewelry and custody of the dogs, and the defendant was ordered to transfer title, free and clear, to his 2013 Hyundai Santa Fe to her. The plaintiff was further permitted to retain all sums of money she previously removed from joint bank accounts, including the unaccounted for $120,000. The defendant was awarded all interest in the unexercised stock options, the UBS Managed Equity account, and the unvested UTC stock. He also retained his photography equipment and tools, the 2011 Hyundai Santa Fe, and the 2003 Toyota Highlander. The defendant's IRA assets, valued at $778,794, were divided 65 percent to the plaintiff and 35 percent to the defendant. The court also ordered that the plaintiff remain the named survivor beneficiary of the defendant's pension annuity retirement income. The parties were ordered to list for sale the marital home immediately. The defendant is solely responsible for the mortgage, real estate taxes, and insurance until the home is sold, and the parties are to divide equally the net proceeds from the sale of the home.[3] The parties were each awarded any residual assets held in their individual names. This appeal followed.

On appeal, the plaintiff argues that the court erred by not (1) awarding to her one half of the UBS Managed Equity account, as it was jointly held; (2) considering the unexercised stock options when determining the

defendant's ability to pay alimony or, alternatively, treating the defendant's unexercised stock options as a marital asset subject to distribution; and (3) distributing a portion of the defendant's current pension annuity retirement income to her. We disagree.

We first set forth our standard of review. "It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous. . . . An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 270–271, 7 A.3d 924 (2010).

"The legal principles that guide our analysis are well established. In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in General Statutes § 46b-81 (division of marital property), General Statutes § 46b-82 (alimony), and General Statutes § 46b-84 (child support). . . . All three statutory provisions require consideration of the parties' amount and sources of income in determining the appropriate division of property and size of any child support or alimony award. . . .

"With respect to the present claim concerning alimony . . . § 46b-82 (a) provides in relevant part: In determining whether alimony should be awarded, and the duration and amount of the award, the court . . . shall consider the length of the marriage . . . the age . . . station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81. . . . The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . We note also that [t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor." (Citation omitted; internal quotation marks omitted.) *Cimino* v. *Cimino*, 155 Conn. App. 298, 303–304, 109 A.3d 546, cert. denied, 316 Conn. 912, 111 A.3d 886 (2015).

In the present case, the court did not abuse its discretion with respect to its alimony award to the plaintiff. As the plaintiff acknowledges, a court may consider unexercised stock options as *either* income for the purposes of an alimony award *or* marital property subject to distribution, but not both.[4] See *McKeon* v. *Lennon*, 321 Conn. 323, 346, 138 A.3d 242 (2016) (stock options and restricted stock can be considered part of gross income when not part of property distribution); see also *Greco* v. *Greco*, 275 Conn. 348, 357 n.8, 880 A.2d 872 (2005); *Krafick* v. *Krafick*, 234 Conn. 783, 804-805 n.26, 663 A.2d 365 (1995). The court permissibly chose to consider the defendant's stock options as part of its property distribution mosaic. With respect to the amount of the alimony award, the court stated that it had reviewed the statutory factors enumerated in the General Statutes and described the age, income, assets, and employability of the parties. The court awarded the plaintiff alimony in the amount of $540 per week until her sixty-fifth birthday. The parties were married for fourteen years and had no children together. The plaintiff is capable of seeking and attaining gainful employment if she chooses to do so, and, in addition to the other marital assets she received, she was awarded the entirety of the survivorship benefits of the defendant's pension annuities. It bears repeating that "[t]rial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes." (Internal quotation marks omitted.) *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 330, 913 A.2d 1096 (2007).

Finally, the plaintiff takes issue with the court's orders distributing the property of this fourteen year marriage. She claims that the court improperly failed to award her a portion of the jointly held UBS Managed Equity account, the defendant's vested, but unexercised, stock options, and the defendant's pension annuity retirement income. Specifically, she argues that the court failed to understand that the UBS Managed Equity account and stock options were marital assets subject to distribution. She also argues that the court should have awarded her 40 percent of the defendant's pension annuity retirement income because she and the defendant were married for fourteen of the thirty-five years he worked at Otis Elevator.[5]

The plaintiff's argument overlooks the fact that "the trial courts are empowered to deal broadly with property and its equitable division incident to dissolution proceedings." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 682, 830 A.2d 193 (2003). General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court *may assign to either spouse all or any part of the estate of the other spouse.*

. . ." (Emphasis added.) When deciding to whom to assign property to, the court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-81 (c). "Whether the parties made a contribution in the acquisition and preservation of property is a question of fact. . . . Accordingly, this court can reverse the trial court's finding that the parties contributed equally to the accumulation and growth of the assets held by the parties as of the date of the dissolution only if it is found to be without any reasonable basis in the evidence." (Internal quotation marks omitted.) *Kiniry* v. *Kiniry*, 71 Conn. App. 614, 628, 803 A.2d 352 (2002).

We disagree with the plaintiff's characterization of the court's financial orders. A careful reading of the court's memorandum of decision, in concert with a close review of the record, coupled with the facts confirmed at oral argument by both counsel, supports the court's equitable division of the marital property. The record reveals that the court was aware that the fifty-two year old plaintiff was the named beneficiary of the defendant's pension annuity retirement income because it ordered that the plaintiff remain the survivor beneficiary. Further, the court additionally awarded the plaintiff, among other things, 65 percent of the defendant's IRAs, which equaled $778,794, her UBS IRA, valued at $25,100, her Employee Provident Fund, valued at $20,000, and one half of the sale proceeds of the marital home.[6] Additionally, the court awarded the plaintiff her individual bank accounts and the 2013 Hyundai Santa Fe, and it did not require the plaintiff to return the $120,000 she withdrew from the parties' marital funds during the pendency of this dissolution action.

After a careful review of the record, we conclude that the court properly applied the relevant statutory criteria and did not abuse its discretion in its division of the marital assets. See, e.g., *Cunningham* v. *Cunningham*, 140 Conn. App. 676, 688–89, 59 A.3d 874 (2013).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff filed the present action by way of a complaint dated December 30, 2013. She removed approximately $38,000 in December, 2013, $60,000 in January, 2014, and $20,000 in January, 2015.

[2] The defendant identified three sources of his pension annuity retirement income—the gross weekly amounts being $1842, $39, and $19. No evidence was introduced at trial as to the value of the marital portion of any of this pension annuity retirement income, as the parties were married for only

eleven years of the thirty-five years the defendant worked at Otis Elevator. The court ordered that the defendant retain the entirety of his pension annuity retirement income and that the plaintiff remain the named survivor annuity beneficiary of this pension annuity retirement income.

[3] The $110,000 of premarital assets contributed by the defendant to purchase the home was not awarded to him.

[4] "In *Bornemann* [v. *Bornemann*, 245 Conn. 508, 518–20, 752 A.2d 978 (1998)], our Supreme Court held that nonvested stock options could properly be considered marital property. . . . It explained that to be considered marital property, however, the court must first determine whether the stock options were earned during the marriage. Id., 521–22. That determination is made by considering the purpose of the award, that is, whether the options constitute compensation for past or future services. Id. On the one hand, stock options that are awarded prior to the date of dissolution and awarded solely for past services are considered to be earned during the marriage and are, therefore, considered marital property subject to equitable distribution under § 46b-81. . . . On the other hand, stock options that are earned prior to the date of dissolution, but that constitute compensation for future services, are not considered to be earned during the marriage and, therefore, are not subject to distribution as marital property under § 46b-81." (Citations omitted). *Kiniry* v. *Kiniry*, 71 Conn. App. 614, 624, 803 A.2d 352 (2002).

The court in the present case did not make any findings concerning when the defendant's stock options were earned and acquired, but the defendant testified that his stock options expired after ten years. Accordingly, it is reasonable to conclude, as the court apparently did, that the stock options were marital property.

[5] As we previously observed, the parties were actually married for only eleven of the thirty-five years the defendant worked at Otis Elevator because the defendant retired three years before the dissolution of their fourteen year marriage.

[6] See footnote 3 of this opinion.

---