******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALAN L. HOREY *v.* JOYCE A. HOREY
(AC 38379)

Lavine, Alvord and Harper, J.

*Argued November 28, 2016—officially released May 2, 2017*

(Appeal from Superior Court, judicial district of New London at Norwich, Carbonneau, J.)

*Lloyd L. Langhammer*, for the appellant (defendant).

*William E. McCoy*, for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendant, Joyce A. Horey, appeals from the financial orders relating to the judgment of the trial court dissolving her marriage to the plaintiff, Alan L. Horey. On appeal, the defendant claims that the trial court abused its discretion by entering an alimony order that terminates upon the sale of the plaintiff's business. She argues that such a time limited alimony[1] order is inconsistent with the facts found by the court, and that the court, therefore, reasonably could not have concluded as it did. For the reasons that follow, we disagree and, accordingly, affirm the judgment of the trial court.

The following procedural history and facts found by the trial court are relevant to the defendant's appeal. The parties were married for approximately forty-three years. Over the past twenty-three years, most of the parties' income appears to have been derived from the plaintiff's business, Professional Financial Services, LLC (LLC), which sells insurance products and investments. The plaintiff is the sole member of the LLC and has structured the LLC's business to derive "trails income." This means that when the plaintiff sells a financial product or insurance policy, he receives a smaller commission at the time of sale than he otherwise would be entitled to, and in return receives a residual percentage of a client's future premiums or payments for as long as the client retains the original product or policy. In recent years, the plaintiff's annual gross income from all sources, including the trails income, has totaled approximately $150,000. The plaintiff expects this income to hold steady for the next two years, but he ultimately plans to sell the business and retire, at which point the trails income would cease. Despite the cessation of this income, the plaintiff testified that he may be required by the purchaser of the LLC to remain involved for some time in order to facilitate the new owner's relationship with existing clients and to preserve the trails income for the new owner. The court made no findings regarding potential compensation for this continued involvement post-sale of the LLC.

On July 22, 2015, the court dissolved the parties' marriage and entered numerous orders regarding the division of marital property, debts, and set forth the plaintiff's obligation to pay alimony to the defendant in the amount of $1000 per week. The order contained no limitation on future modifications of the alimony award; however, it did provide for alimony to terminate upon the sale of the LLC. The court specified that any such sale must be an arm's length transaction at fair market value and that the plaintiff must pay one half of the net proceeds of the sale to the defendant. This payment to the defendant is to mirror the form of the payment made to the plaintiff, whether lump sum,

installments, or some combination thereof, thus ensuring parity. The court expressly retained jurisdiction over issues involving the sale of the LLC in order to effectuate the intent of its orders to divide the assets of the parties equitably. The court also provided for the equal division of pensions, other retirement assets, bank accounts, real property, and sale proceeds from two residential properties.[2]

On July 30, 2015, the defendant filed a motion to reargue, among other issues, the termination of alimony upon the sale of the LLC. In that motion, the defendant argued that the court's orders were designed expressly to ensure equitable alimony payments to the defendant, but nevertheless fail to provide for a scenario in which the plaintiff could structure his sale of the LLC to avoid payments to the defendant. In particular, the defendant argued the plaintiff could structure the sale to shift a significant portion of the sale proceeds from an upfront purchase payment to a post-sale consultation fee or some similar arrangement. Under the court's alimony order, the defendant would not be entitled to receive any portion of the funds paid to the plaintiff after the sale, which rendered the alimony award unreasonable and, therefore, an abuse of discretion by the court.

On August 25, 2015, the court granted the motion to reargue and heard oral arguments from the parties. At the conclusion of this hearing, the court stated that in drafting the alimony order, it had been aware that General Statutes § 46b-86 deems all alimony awards to be modifiable unless and to the extent that the court's decree precludes modification. The court stated that it specifically had worded the alimony order so as to allow modification in the future. The court acknowledged *the possibility* that the plaintiff could attempt to structure the sale of the LLC in a manner designed to avoid obligations to the defendant, but nevertheless noted that its order set standards designed to avoid this possibility. Finally, the court noted that it expressly retained jurisdiction over issues arising from the sale of the LLC in order to correct any inequities that may arise in the sale and to make any alteration of the alimony award made necessary by the sale of the LLC. For those reasons, the court declined to revise the alimony order. This appeal followed.

On appeal, the defendant argues that the court abused its discretion in ordering that alimony payments terminate upon the sale of the LLC. She asserts that the court's order was logically inconsistent with its factual findings, particularly that she lacks the ability to be financially self-sufficient. She argues it was unreasonable for the court to terminate alimony upon the sale of the LLC under such circumstances. Additionally, she argues that this limitation of the alimony award also failed to give effect to the court's intention to equitably divide the income the plaintiff derives from the LLC

because the court's order did not account for how the defendant will share in any income the plaintiff derives from the LLC after it is sold.

We begin by setting forth the standard of review applicable to a court's decision regarding financial orders. "We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Procaccini* v. *Procaccini*, 157 Conn. App. 804, 808, 118 A.3d 112 (2015). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Wood* v. *Wood*, 170 Conn. App. 724, 728, A.3d (2017).

"The generally accepted purpose of . . . alimony is to enable a spouse who is disadvantaged through divorce to enjoy a standard of living commensurate with the standard of living during marriage." (Internal quotation marks omitted.) *Brody* v. *Brody*, 315 Conn. 300, 313, 105 A.3d 887 (2015). "In addition to the marital standard of living, the trial court must also consider the factors in [General Statutes] § 46b-82 when awarding alimony." *Hornung* v. *Hornung*, 323 Conn. 144, 163, 146 A.3d 912 (2016).

General Statutes § 46b-82 (a) provides in relevant part that "[i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the [division of property made] pursuant to [General Statutes §] 46b-81 . . . ." "The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . We note also that [t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor." (Internal quotation marks omitted.) *Wood* v. *Wood*, supra, 170 Conn. App. 729. "[T]he record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand." (Internal

quotation marks omitted.) *Finan* v. *Finan*, 100 Conn. App. 297, 310, 918 A.2d 910 (2007), rev'd on other grounds, 287 Conn. 491, 949 A.2d 468 (2008).

In the present appeal, the trial court did not abuse its discretion by limiting the duration of the defendant's alimony award to the duration of the plaintiff's ownership of the LLC. It is well established that the trial court in a dissolution action has discretion to order a time limited alimony award. See, e.g., *Finan* v. *Finan*, supra, 100 Conn. App. 310–11 (time limited alimony is often awarded). Although such time limited awards are often awarded to provide interim support while one party acquires new skills and education to facilitate financial self-sufficiency, such awards are not limited to that purpose and are "also appropriately awarded to provide interim support until a future event occurs that makes such support [more or] less necessary or unnecessary." (Internal quotation marks omitted.) Id., 310; see also *Mongillo* v. *Mongillo*, 69 Conn. App. 472, 478, 794 A.2d 1054, cert. denied, 261 Conn. 928, 806 A.2d 1065 (2002). Additionally, where an alimony award is modifiable as to amount or duration, any prejudice caused by the time limitation of the alimony award can be mitigated by timely filing a motion for modification of the alimony award. See *Mongillo* v. *Mongillo*, supra, 479.

The record in this appeal reveals sufficient evidence to support the trial court's limitation of the alimony award to the duration of the plaintiff's ownership of the LLC, with no limitation on a future modification of the alimony award. The record reveals that the court reasonably viewed the alimony issue as closely tied to both the duration of the plaintiff's income from the LLC and this income source's relationship to the parties' retirement plans. It is therefore necessary to understand how the plaintiff derives income from the LLC and for what duration this income can be reasonably expected to continue.

The plaintiff's work at the LLC consists of serving as a middleman selling securities, insurance, and other financial products offered by a separate company called Investicore, which the plaintiff does not own. When the plaintiff sells one of these products, he has the option to select how he is compensated. He has structured his transactions so that he receives a smaller payment upon sale of the product in exchange for receiving a continuing percentage of premiums or fees so long as the customer retains that product. The continued percentage payments are called "trails income," and over time, it has become the majority of his income. The trails income from a particular product ceases whenever a client discontinues a subscription to a product, which in turn can cause the value of the plaintiff's portfolio of trails income to fluctuate. The plaintiff deliberately chose to structure his transactions this way in order to provide a continuing income stream during his and the

defendant's retirement.

Both parties are now at or approaching retirement age and the plaintiff testified that he has begun preparing for retirement. The plaintiff's plan is, over the course of the next few years, to bring on one or two new associates, train them to take over the LLC, and then sell the LLC to those associates. The sale price of the LLC is expected to account for the projected future value of the trails income portfolio, which will be transferred to the new owner. In this industry, the value of the LLC is almost entirely based on the value of that portfolio. In the interim, the plaintiff is working to generate new sales, and consequently new trails income, in order to maintain the value of the portfolio as older trails lapse. Importantly, the timeline for this transition and the specific details of the LLC sale are undetermined and this plan simply represents the parties' current expectations.

Under the trial court's order, the parties will share equally in the net proceeds from the sale of the LLC. Because the sale price of the LLC is expected to be based substantially on the projected future value of the trails portfolio, it is reasonable to anticipate that the court's order ensures that both parties receive an equal share of the income they expected to receive in retirement from the trails income. However, the defendant argues the court's order leaves her at risk of losing her expected retirement income from the trails portfolio because, under the order, the plaintiff could structure the sale so that the majority of the sale proceeds are paid to him in the form of consulting fees, or some similar arrangement, after the business has been transferred. She speculates that because the alimony award terminates at the sale and the court's order only entitles her to a share of the sale proceeds, she risks losing the retirement income that she expected from the trails portfolio, and this fact renders the court's order unreasonable and an abuse of discretion. We conclude these fears are *speculative* and unfounded.

The trial court's orders governing the sale of the LLC set clear ground rules designed to protect the defendant's interests. These ground rules are important because the timeline and details of the LLC sale are uncertain. As the plaintiff prepares the LLC for sale, the defendant has the right to inspect the LLC's bank records, tax returns, and other financial records as necessary to insure that the plaintiff is proceeding in good faith. At least thirty days prior to any contemplated transfer or sale of a client, business asset, or the LLC itself, the defendant is entitled to a complete written explanation of the transaction. When the plaintiff sells the LLC, it must be an arm's length transaction at fair market value. Finally, the court expressly retained jurisdiction over the sale to ensure compliance with these guidelines and to ensure that the sale effectuates the

court's intent for the equitable division of assets between the parties. These precautions may be reasonably expected to protect the defendant's interests in the future value of the trails portfolio, despite the fact that the exact details of the LLC sale cannot now be predicted with certainty.

In light of the evidence in the record, we conclude that it was reasonable, and therefore not an abuse of discretion, for the trial court to conclude that it was appropriate to order a time limited or contingent alimony award with no limitations on future modification. Indeed, after hearing reargument on the alimony issue, the court stated that the determining factor in resolving the defendant's alimony complaints was the first sentence of General Statutes § 46b-86 (a), which provides that an alimony decree is modifiable unless the order expressly precludes modification. We agree.

The court explained: "I never precluded modification of the alimony order anticipating that there were future—possible future events that could come about that would require a second look. . . . I tried to devise a baseline [for the LLC sale] . . . [an] arm's length transaction and fair market value that would signal a future court as to . . . this court's intention. . . . [I]f there are any financial . . . shenanigans, that's going to be explored fully by one side or the other at that future date with a factual underpinning [regarding the LLC sale], not any speculation that we could put forward now. And the sale of the business wouldn't be the only aspect of the decision in play at that time. The alimony might be in play at that time, because it is specifically not made nonmodifiable. If the circumstances warrant it, it was this court's intention that the alimony could be looked at again, not after the fact, but at the time of the sale . . . . The termination of the alimony at the sale of [the] business acknowledges the testimony as to what that trails income was for. It was reserved and set aside for the future, specifically. The sale of [the] business, at an arm's length transaction at fair market value, I think, provides [the defendant] with the court's intended future, half of whatever [the] business accumulated at the time."

This record shows that the trial court understood the significance of the trails income, not just as the parties' immediate income but also as an expected substantial income stream for retirement. The court's explanation at the reargument hearing is clear that the posttrial orders were designed to protect the defendant's interests in that future trails income by setting standards for the sale of the business and providing her with an avenue to seek continued alimony should that be appropriate. Accordingly, we conclude that the trial court did not abuse its discretion and reasonably determined that a time limited or contingent alimony award was appropriate.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that while the parties in this appeal refer to the alimony award as time limited, it would be more precise to describe the award as having a contingent termination provision. The termination of alimony is contingent upon the occurrence of an event, namely, the sale of the business. It is possible, though unlikely, that this contingent termination event may never occur, in which case the alimony award would be, by its terms, indefinite. In the present matter, the triggering event is firmly expected by both parties within the next several years and we therefore will follow the parties' example in referring to the award as time limited. Moreover, this distinction does not substantively affect our analysis in this matter.

[2] The court's orders also provided for the division of several vehicles and personal property that are not relevant to the claims raised by the defendant in this appeal.

---