******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HEATHER WILSON *v.* MICHAEL Di IULIO
(AC 41240)

DiPentima, C. J., and Bright and Moll, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
dissolving his marriage to the plaintiff and issuing certain financial
orders. The defendant claimed that the trial court improperly failed to
award him more than nominal alimony despite the substantial disparity
in the parties' incomes and ability to pay expenses, and abused its
discretion by making a property award enforceable by a modifiable
alimony award. *Held*:

1. The trial court did not abuse its discretion in failing to award more than
   nominal alimony to the defendant; that court created an effectively equal
   division of the parties' marital assets by ordering the plaintiff to discharge
   the mortgage on the marital property, in which the defendant continues
   to reside, and to convey funds from her retirement plan to the defendant.

2. The defendant could not prevail on his claim that the trial court erred in
   its property division by making a property award enforceable by a
   modifiable alimony award; the court, which entered orders designating
   the defendant as the alternate payee pursuant to a domestic relations
   order but recognized that a decision by the plaintiff to remarry could
   divest the defendant of that award because a new spouse would have
   to consent to the designation of the defendant as the survivor beneficiary
   under the terms of the plaintiff's retirement plan, acted within its discre-
   tion in fashioning the award, as it considered the restrictions in the
   plaintiff's retirement plan and, to account for them, ordered nominal
   alimony of $1 per year to the defendant as security for the award, and
   the court did not retain jurisdiction to modify the property award in
   the future but, rather, issued an award of nominal alimony for the
   protection of the defendant, which was not an abuse of discretion.

Argued March 11—officially released August 27, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Hartford and tried to the court, *Olear, J.*; judg-
ment dissolving marriage and granting certain other
relief; thereafter, the court denied the defendant's
motion for an articulation, and the defendant appealed
to this court. *Affirmed.*

*John F. Morris*, for the appellant (defendant).

*Steven R. Dembo*, with whom were *Caitlin E. Koz-
loski* and, on the brief, *P. Jo Anne Burgh*, for the appel-
lee (plaintiff).

*Opinion*

MOLL, J. The defendant, Michael Di Iulio, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Heather Wilson, and entering related financial orders. On appeal, the defendant claims that the court erred by (1) failing to award him more than nominal alimony despite the substantial disparity in the parties' incomes and ability to afford expenses and (2) making a property award enforceable by a modifiable alimony award. We disagree with the defendant and, accordingly, affirm the judgment of the trial court.

The following facts, as set forth in the court's memorandum of decision,[1] and procedural history are relevant to our discussion. The parties began dating in 1991, when they both were employed by the Office of the Attorney General. The plaintiff was, and continues to work as, an assistant attorney general; the defendant worked as an accountant until 2002 or 2003, when he retired. The parties were married on October 6, 1999. By complaint dated June 7, 2016, the plaintiff commenced the present action seeking dissolution of the parties' marriage.

The parties have two children, a daughter born in 2000, and a son born in 2004. The parties agreed to share joint legal custody of the children and, during trial, asked the court to incorporate their parenting plan into the court's decision. The parties' daughter resided with the plaintiff, and the parties' son shared time with both parents by staying with each parent alternating weeks. The parties agreed that the children have attended and may continue to attend private schools and that the parties would pay these expenses from the assets that they had accumulated for the children. The parties also agreed, and the court ordered, that the children's postsecondary education expenses would be paid from the funds in certain specified accounts and that the plaintiff would pay any costs remaining after the application of such funds.

At the time of trial, the plaintiff was fifty-seven years old and generally was healthy. She has a bachelor's degree, as well as a juris doctor and has worked at the Office of the Attorney General since 1986.[2] The plaintiff's biweekly salary was $5968 and her net weekly income after mandatory deductions was $1991. The plaintiff is fully vested in the Connecticut state employee retirement system. The court found that until recently, the plaintiff had withheld funds from her biweekly paycheck for investment in her 457 retirement plan. The plaintiff also has premarital assets and assets inherited from her mother.

At the time of trial, the defendant was seventy years old. He has a bachelor's degree and retired from the Office of the Attorney General in 2002 or 2003. Prior

to his employment with the Office of the Attorney General, the defendant worked for various entities doing accounting and cost analysis. The court found that the defendant was not advancing in his position with the Office of the Attorney General and was working for a difficult supervisor. The parties mutually decided that the defendant would retire, enabling him to provide care to the parties' young children and allowing the plaintiff to continue working.

The defendant took an early retirement package and elected, irrevocably, the 50 percent option form of reduced retirement income for the plaintiff's benefit.[3] The defendant's current pension payment is $393 per week, and he receives social security income in the amount of $249 per week. The court found the defendant's net income to be $842 per week, based on a gross income of $982 per week.[4] The court declined the plaintiff's request to impute $27,105 in annual retirement income withdrawals to the defendant from his retirement investment accounts; the court stated, however, that it had considered the availability of funds in the defendant's accounts in structuring its orders. The court found that the defendant had premarital assets and assets inherited from his family and that he had contributed to a deferred compensation plan when he was employed. Finally, the court found that, upon retirement and against the plaintiff's wishes, the defendant rolled over the funds from his state managed retirement fund into a Charles Schwab account that he could manage.

Prior to the marriage, the plaintiff owned a home in Meriden, and the defendant owned a home in Winsted. In 1995, the plaintiff moved into the Winsted home and thereafter sold her home in Meriden. The parties refinanced the mortgage on the Winsted property using a portion of the proceeds of the sale of the Meriden home and thereafter owned the Winsted property as joint tenants. In January, 2011, the parties purchased the marital residence located in New Hartford. They did not move into that home until November, 2011, as they wanted to make some improvements to the home prior to moving in. In October, 2012, the parties sold the Winsted home.

In March, 2016, the plaintiff informed the defendant that she was moving out. In May, 2016, the plaintiff purchased a home in Unionville, where she continues to reside. The plaintiff valued the Unionville home at $280,000. The court found that the majority of funds utilized to acquire this home were premarital and/or inherited funds, that this home was subject to a mortgage of $45,000, and that the plaintiff had $235,000 of equity therein. The defendant continues to reside in the New Hartford home. According to the financial affidavits of both parties, the mortgage on the New Hartford property had a principal balance of $162,000. The court

found that the fair market value of the home was $350,000 and that the parties had $188,000 in equity in the home.

In its memorandum of decision dissolving the parties' marriage, the court did not attribute significantly greater fault for the breakdown of the marriage to either party. It ordered the plaintiff to make the monthly payments on the New Hartford mortgage from and after the date of the judgment and to discharge the mortgage encumbering the property within six months from the date of the judgment. The court further ordered that the plaintiff convey to the defendant the sum of $126,000 from her 457 retirement account. With regard to the plaintiff's pension, the court noted that, pursuant to the plaintiff's Connecticut state employee retirement plan, the plaintiff could not elect a survivor beneficiary of her retirement benefits until she retired and that, if the plaintiff is remarried when she retires, the new spouse would have to consent to the designation of the defendant as the survivor beneficiary. The court entered orders designating the defendant as the alternate payee pursuant to a domestic relations order.[5] The court further ordered that no alimony was payable by one party to the other except as set forth in section G.4 of the dissolution judgment, which governed the distribution of the parties' respective retirement accounts. Pursuant to section G.4 (v) of the dissolution judgment, the defendant was awarded $1 per year in alimony "modifiable only to enforce the rights called for in this provision."

Following the denials of the defendant's postjudgment motion for articulation and motion to reargue, the defendant filed the present appeal.[6]

I

The defendant first claims that the court erred by failing to award him more than nominal alimony despite the substantial disparity in the parties' incomes and ability to pay expenses.[7] He contends that the plaintiff's financial affidavit reveals a surplus of income over expenses while the defendant's affidavit reveals a shortfall.[8] Specifically, the defendant points out that the plaintiff's net income, as reflected on her financial affidavit, was $1966 per week and her expenses were $1178 per week, while he had a weekly income of $642 and weekly expenses of $1270. In addition to the disparity in the parties' incomes, the defendant notes that he has been retired for fifteen years and is seventy years of age. He points out that he retired by agreement of the parties, enabling him to care for the parties' children and allowing the plaintiff to focus on her career. Finally, the defendant notes that the court did not attribute any fault to either party in its decision. The plaintiff counters that the court did not abuse its discretion in declining to award additional alimony to the defendant. We agree with the plaintiff.

We first set forth the standard of review applicable to the defendant's claim on appeal. "We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Horey* v. *Horey*, 172 Conn. App. 735, 740, 161 A.3d 579 (2017). "That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and attitude of the parties." (Internal quotation marks omitted.) *Mensah* v. *Mensah*, 167 Conn. App. 219, 228, 143 A.3d 622, cert. denied, 323 Conn. 923, 150 A.3d 1151 (2016).

"General Statutes § 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . . In awarding alimony, [t]he court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor. . . . The trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case." (Citations omitted; internal quotation marks omitted.) *Emerick* v. *Emerick*, 170 Conn. App. 368, 379–80, 154 A.3d 1069, cert. denied, 327 Conn. 922, 171 A.3d 60 (2017). "There is no absolute right to alimony." *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 637, 561 A.2d 443 (1989).

At trial, the defendant testified that he received his bachelor's degree in accounting from Central Connecticut State University in 1976. Upon graduation, the defendant worked as a cost analyst, first at Waring Products in New Hartford and later at Ensign Bickford in Simsbury. He then worked as a plant accountant for UNC Naval Products in New London for six years before going to the Attorney General's Office, where he worked as an accountant for approximately fifteen years before retiring in 2002 or 2003. Once the defendant retired, he took over household and childcare responsibilities and never again obtained full- or part-time employment in the accounting field.

The defendant testified that his current annual income, consisting of his pension and social security, is approximately $32,000 and that he uses his pension payments to pay the mortgage on the property in New Hartford. In his amended proposed orders,[9] the defendant proposed that the plaintiff be ordered to pay him $650 per week, or approximately $34,000 annually, in permanent alimony. He testified that he based his request for alimony on the cost of running the household. He further testified that it was his position that the plaintiff should pay this expense in its entirety and that the court should order that this award be permanent and nonmodifiable, even if the plaintiff retired or became disabled or ill.[10]

The plaintiff testified that she received her law degree from Boston College Law School and has been employed at the Attorney General's Office since 1986. She started as an assistant attorney general 1 and is now an assistant attorney general 4, which is the highest civil service level in the Attorney General's Office. The plaintiff's financial affidavit reflected a gross weekly income of $2996, although she conceded at trial that the income as shown on a pay stub admitted into evidence reflected a gross weekly income of $3357. The plaintiff proposed using approximately $139,000 of her solely held assets to pay off the mortgage on the New Hartford property where the defendant lived with the parties' son. She testified that she wanted to have the defendant "in a more comfortable financial position by not having a mortgage to be concerned about." She also thought it was important that the parties' son continue to reside in that house because he had friends in the neighborhood. According to the plaintiff, the monthly mortgage payment on the house was approximately $1900 per month in principal and interest, and she indicated that she would consider the $139,000 payoff of the mortgage "as essentially sort of being in place of alimony in a lump sum, that will reduce his need for alimony because it will you know bring his expenses down significantly."

In its decision, other than the nominal alimony award set forth in section G.4 (v) of the dissolution judgment, the court declined to award alimony to either party and ordered, inter alia, that the plaintiff discharge the mortgage on the New Hartford property within six months from the date of judgment. The court stated that, after considering General Statutes §§ 46b-81 and 46b-82, it had "fashioned the additional property settlement by the plaintiff to the defendant in lieu of the payment of periodic alimony and further to allow the plaintiff to be removed from liability from the mortgage presently encumbering the marital residence." The court further awarded each party the assets they respectively held and ordered that the plaintiff convey to the defendant the sum of $126,000 from her 457 retirement

plan with the state. In his brief, the defendant concedes that these transfers "created an effectively equal division of the parties' marital assets."

The trial court stated that its decision not to award alimony beyond the nominal alimony set forth in section G.4 (v) of the dissolution judgment was "based on the statutory factors, including the age, education, earnings, cause of the breakdown, the estate and needs of the parties, and the division of assets . . . ." Although the court did not attribute significantly greater fault for the marital breakdown to either party, it indicated that the defendant's testimony was often sarcastic and frequently not credible and that, despite being an accountant, he claimed not to understand the proposed orders and certain questions related to financial and/or retirement matters. The court indicated that it found the plaintiff's testimony to be more credible. See *Mensah* v. *Mensah*, supra, 167 Conn. App. 228 (trial court in best position to assess circumstances surrounding dissolution action, including demeanor and attitude of parties). The defendant acknowledges that the court created an effectively equal division of the parties' marital assets by ordering the plaintiff to discharge the mortgage on the New Hartford property and to convey $126,000 from her 457 retirement plan to him. On the basis of our review of the record, and in light of these orders, we cannot conclude that the court abused its discretion in declining to award the defendant more than nominal alimony. Accordingly, the defendant's claim fails.

II

The defendant next argues that the court erred in its property division by making a property award enforceable by a modifiable alimony award. We disagree.

As previously stated, "[w]e review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Horey* v. *Horey*, supra, 172 Conn. App. 740.

The court entered orders designating the defendant as the alternate payee pursuant to a domestic relations order. See footnote 5 of this opinion. Recognizing that a decision by the plaintiff to remarry could divest the defendant of this award, because the new spouse would have to consent to the designation of the defendant as the survivor beneficiary, the court ordered $1 per year in alimony to the defendant "modifiable only to enforce the rights called for in this provision." According to the

defendant, this solution conflates the nonmodifiable nature of a property division with the modifiable nature of an alimony award.

The plaintiff agrees that a property award pursuant to § 46b-81 cannot be modified after judgment. She argues, however, that there is nothing in the court's decision that seeks, orders, or retains jurisdiction to modify a property settlement in the future. The plaintiff argues, rather, that the court was within its discretion to award alimony of $1 per year as security in favor of the defendant given the terms of the plaintiff's retirement plan. We agree with the plaintiff.

In *Utz* v. *Utz*, 112 Conn. App. 631, 963 A.2d 1049, cert. denied, 291 Conn. 908, 969 A.2d 173 (2009), this court considered an order similar to the order at issue in the present case. In *Utz*, the trial court ordered the defendant to pay the plaintiff, inter alia, $1 per year in alimony "until such time as the property settlement [entered by the court was] paid in full and the liens and encumbrances on the [marital home], which the defendant is obligated to indemnify on account of [the property settlement was] paid in full and, or, released, or he exercises his option to purchase the residence and acreage." (Internal quotation marks omitted.) Id., 633 n.1. The trial court further stated that the order of $1 per year in alimony would be "modifiable to the extent necessary to ensure that the defendant satisfies all of his obligations under the property settlement, periodic alimony and lump sum alimony orders." (Internal quotation marks omitted.) Id. On appeal, the defendant argued that the court's order of $1 per year in nominal alimony was evidence of the court's knowledge that he would be unable to comply with the court's order. Id., 634–35. This court rejected the defendant's claim, concluding that the court acted within its discretion in entering the order. Id., 636.

As in *Utz*, we conclude that the court in the present case acted within its discretion in fashioning the award as it did. The court considered the restrictions in the plaintiff's retirement plan, which require that a future spouse of the plaintiff consent to the designation of the defendant as a survivor beneficiary. To account for this scenario, the court ordered nominal alimony of $1 per year to the defendant as security for the award.[11] The court did not retain jurisdiction to modify the property award in the future but, rather, issued an award of nominal alimony for the protection of the defendant. On the basis of our review of the record, we cannot conclude that the court abused its discretion in entering this order.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court's memorandum of decision also addressed a motion for contempt filed by the defendant. This part of the court's ruling is not at issue in the present appeal.

[2] The court found that the plaintiff had worked at the Office of the Attorney General since 1988. The plaintiff testified, however, that she met the defendant in 1988 when they both were employed at the Office of the Attorney General but that she had started working in that office in September, 1986.

[3] By making that election, the defendant's base allowance of $16,640.10, which would have been payable monthly in the amount of $1,386.68, was reduced to $14,109.14, payable monthly in the amount of $1,175.76. The plaintiff's retained benefit is $588 per month.

[4] In arriving at these figures, the court also included, in the defendant's income, a $340 per week social security dependency benefit paid to the parties' children.

[5] Specifically, the court ordered that "the defendant as the alternate payee shall receive, by a [domestic relations order], and the plaintiff is directed to pay benefits to the alternate payee as a marital property settlement under the following formula: fifty (50) percent of the gross monthly benefit payable at the date of distribution to the plaintiff (member) multiplied by the 'service factor.' The numerator of the service factor is the number of years accumulated during the marriage period and the denominator is the member's total years of service covered by the plan and used in calculating the member's benefit. The amount payable to the defendant shall include a proportionate share of any cost-of-living adjustments (COLAs) payable to the plaintiff.

"This award of 50 percent of the gross monthly benefit payable at the date of distribution to the plaintiff (member) multiplied by the 'service factor' entitles the defendant to rights of joint survivor benefits, which are herewith ordered as his, and the plaintiff is ordered to so continue that designation to his benefit. The plaintiff's retained right of designation of the alternate payee is limited by this order."

[6] The defendant also filed a motion for articulation after filing this appeal, asking the trial court to articulate the factual and legal basis for several of its financial orders. The trial court declined to articulate as requested. The defendant did not file a motion for review of that articulation with this court. See Practice Book § 66-7.

[7] In support of his argument, the defendant contends, in part, that none of the usual reasons used to justify time limited alimony applies. See *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 273–75, 7 A.3d 924 (2010); *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 460–61, 995 A.2d 117 (2010). We note, however, that the defendant did not request, and the court did not order, time limited alimony.

[8] As part of this argument, the defendant claims that this shortfall can only increase, as he has been left solely responsible for the private school expenses of the parties' son. Specifically, the defendant contends that although the parties agreed that their children would continue to attend private schools and that they had agreed to fund such costs from the assets they had accumulated for the children, the court never entered this agreement as an order. The only order in the court's decision concerning education expenses pertained to postmajority education, in which the court ordered the plaintiff to assume and pay for all college costs remaining after application of certain specified accounts.

We note, however, that the defendant did not submit a proposed order with regard to the payment of private school tuition. Further, when the plaintiff attempted to question the defendant during cross-examination about the private school tuition, the defendant objected on the ground that the question went beyond the scope of direct examination. Finally, although the defendant filed a motion asking the trial court to articulate the factual and legal basis for several of its orders, the motion did not reference the payment of private school tuition.

"As the appellant, the defendant has the burden of providing this court with a record from which this court can review any alleged claims of error. . . . It is not an appropriate function of this court, when presented with an inadequate record, to speculate as to the reasoning of the trial court or to presume error from a silent record." (Internal quotation marks omitted.) *United Amusements & Vending Co.* v. *Sabia*, 179 Conn. App. 555, 561, 180 A.3d 630 (2018). In the present case, in addition to failing to submit a proposed order regarding private school tuition, the defendant objected to questioning on this issue and failed to include, in his motion for articulation, a request that the court address this issue. Because we are left to speculate with regard to the defendant's claim of increased educational expenses for the parties' son, we decline to review this claim.

[9] Although the caption of this document is "Plaintiff's Amended Proposed Orders," the document was filed by counsel for the defendant.

[10] The defendant also testified that he should receive 50 percent of the plaintiff's pension at the time of the final dissolution, even though it was not in pay status, and speculated that the plaintiff would be able to comply with the court's order from her current assets. The defendant testified as follows on cross-examination:

"[The Plaintiff's Counsel]: Now if the court orders the amount of money you're requesting, and to be clear . . . you are requesting that the court order a transfer to you from [the plaintiff] of $883,690 on the day of the divorce.

"[The Defendant]: Okay, yes.

"[The Plaintiff's Counsel]: Do you have an understanding of, from what assets [the plaintiff] would be able to meet such an order?

"[The Defendant]: Mm-hmm.

"[The Court]: You have to say yes or no.

\* \* \*

"[The Plaintiff's Counsel]: Okay, how would you—how do you see her doing that?

"[The Defendant]: Well, she could take out a loan on her house.

"[The Plaintiff's Counsel]: Mm-hmm.

"[The Defendant]: She has substantial savings.

"[The Plaintiff's Counsel]: Mm-hmm.

"[The Defendant]: My understanding [is] she has over a million dollars in assets, financial assets."

[11] "Nominal alimony, commonly $1 per year, is typical when the court chooses to preserve for a future date the power to ascertain and to determine the appropriate amount of periodic alimony." *Utz* v. *Utz*, supra, 112 Conn. App. 633 n.1.