******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

FLYNN, J., dissenting. I cannot agree that the trial court properly denied the defendant an evidentiary hearing on his motion to open based on fraud. I would conclude that the motion court erred in denying the defendant's motion to open without holding an evidentiary hearing and, accordingly, reverse the judgment and remand for another hearing on the defendant's motion at which evidence may be taken.

I disagree with the decision reached by the majority, first, because the defendant was not accorded an opportunity to present his after discovered new evidence of the plaintiff's admission to adulterous conduct, a conduct which she had denied under oath in the earlier trial of her divorce.

Second, because the exercise of the court's discretion depended on issues of fact that were disputed at trial, due process required that the defendant be permitted to present his after discovered evidence.

Third, I do not agree with the motion court and the majority that the nonsexual affair, which the dissolution court attributed to the plaintiff, can be equated with the putative adultery on her part that the defendant claims his new transcript evidence shows. Adultery is a more egregious form of marital infidelity. If proved, that new evidence could work a different result in awards of alimony and property division.

Fourth, although I agree that whether any discovery was warranted was within the motion court's discretion, the motion court had to listen to the defendant and his evidence to exercise that discretion to determine if discovery were necessary to authenticate the transcript evidence.

Fifth, the defendant had but one trial where evidence was offered. Therefore, I do not agree with the motion court that he already had "three bites at the apple" because of his appeals of the initial divorce judgment, or that his divorce appeals justified denying his motion to open.

Sixth, I do not agree with the majority that the dissolution court's finding that the defendant lacked credibility as to his finances could somehow justify the motion court's denial of an evidentiary hearing. Our statutes are clear as to both alimony and property awards that causes of the marital breakdown can be considered in the making of such awards. The dissolution court made findings as to what the defendant's financial resources were. That matrix presumably would not change. Any imperfections in his financial affidavit were not the cause of the marital breakdown because they occurred *after* the marital breakdown.

I do not disagree with much of the majority's reiteration of multiple facts found by the dissolution court. However, I do not find most of them persuasive on the issue of whether the defendant's motion to open properly was denied without hearing evidence. Most of those marshalled facts do not address the defendant's principal issue, namely, that he was entitled to an evidentiary hearing by the motion court regarding new evidence of facts the dissolution court did not hear. If heard and credited, they are after discovered evidence of the plaintiff's admission to adulterous conduct which she had denied under oath in the dissolution trial.[1]

While the action for dissolution was pending, the defendant was arrested on the complaint of the plaintiff for an alleged assault on the plaintiff. After Judge Carbonneau's judgment of dissolution had entered, that criminal charge against the defendant subsequently was dismissed by the Superior Court after a police investigation of the alleged assault. This fact looms important in my analysis because, as part of the investigation of the alleged assault, police obtained the plaintiff's cell phone records that the defendant alleges reveal the plaintiff's admission to engaging in a sexual relationship with another man while married to the defendant. Subsequent to the dismissal of the assault charge, the defendant was able, by subpoena, to gain access to a transcript of the plaintiff's cell phone records that the police had obtained. The memorandum of decision was issued while the defendant's assault case was still pending. The dissolution court found that the plaintiff had engaged in an affair, but nonetheless found that there was no direct evidence that it was sexual in nature. The dissolution court further found: "While the wording of defendant's interrogatories dated September 30, 2015 concerning plaintiff's extramarital relationships may have been imprecise, plaintiff's responses—under oath—were less than forthcoming. Plaintiff's recollection of her relationship with George Jones was vague. . . . The court has considered her relationship with another man during the marriage. The court finds no direct evidence of her and this other man ever having sex."[2]

Ordinarily, trial courts do not cite to a lack of evidence on some point, unless that point on which evidence is lacking might make a difference to some issue decided if the evidence existed, were offered, and found to be credible. However, in this case, the dissolution court expressly *did* cite to a lack of such evidence. It found "no direct evidence of her and this other man ever having sex."[3] This indicates that had such direct evidence existed before the trial court, that orders of the court might have been different. Paragraphs 15 and 16 of the defendant's motion to open are the equivalent of an offer of proof. In those paragraphs, the defendant alleges nothing less than that a police transcript of the plaintiff's conversation via text message with her then

attorney revealed an agreement with him to deny under oath at trial that she had been adulterous, followed by an overt act wherein she so denied it under oath before the court hearing the dissolution, which was not corrected of record by her attorney. It is undisputed that this is not a situation, as discussed in *Billington* v. *Billington*, 220 Conn. 212, 225, 595 A.2d 1377 (1991), in which both parties in marital litigation commit fraud on the court by joining to conceal material information from the court. The defendant admitted to such at oral argument before this court. However, the defendant in the present case made the claim in his motion to open that the plaintiff conspired with her attorney to deceive the court and the defendant by concealing information about her sexual affair. Although this is not the type of fraud on the court discussed in *Billington*, nonetheless the allegations, if proved true, *are* fraud. Defining fraud in the marital dissolution context in such a limited way as to not include collusion by an attorney and client to conceal material information from the court and opposing party, deprives courts of a basic function in dissolution cases, namely, to fairly make awards of property division and alimony, both of which can be substantially affected if presented with credible evidence of an extramarital sexual affair, which caused the marital breakdown.

In fairness, the defendant was never accorded the right to put on later discovered evidence from the police transcript before the motion court. If found credible, that evidence would constitute direct evidence of the adulterous conduct that the plaintiff had denied under oath and that the dissolution court found lacking.

The majority holds that there was no evidence that the divorce court relied on the plaintiff's alleged misrepresentation. I disagree. That reasoning ignores the dissolution court's finding that there was no *direct* evidence that the plaintiff's affair was sexual in nature. The dissolution court could not rely on evidence it never heard and that the plaintiff withheld and expressly, falsely denied the existence of under oath.

In the defendant's motion to open the dissolution judgment on the basis of fraud, he set forth: "On October 2, 2017, approximately a year after the court issued its memorandum of decision, the Plymouth police department released record [sic] of the plaintiff's text messages that were extracted from the plaintiff's cell phones. The Plymouth police department had seized the plaintiff's cell phones to investigate the plaintiff's false allegation of assault. The extracted text messages from the plaintiff's cell phone disclosed a very graphic relation between the plaintiff and George Jones spanning for over a year prior to the plaintiff's filing of divorce. The extracted text messages from the plaintiff's cell phone disclosed communication between the plaintiff and her counsel, in which [A]ttorney Ollennu

was counseling the plaintiff to mislead the court by concealing her sexual affair from the judge so the judge won't feel sorry for the defendant."[4]

The motion court and the parties focused on the defendant's allegations of fraud, an exception to the four month rule, which necessarily implies that the motion to open was filed beyond the four month period. At the hearing on the defendant's motion to open, the motion court opined that its concern was that the motion was in effect "a third bite at the apple" because the defendant's divorce action had already been heard by the dissolution court, reviewed by the Appellate Court, and certification to appeal the decision of the Appellate Court had been denied by our Supreme Court. The motion court further opined that the problem it saw with the defendant's motion was that the dissolution court had discredited both the plaintiff and the defendant. The defendant's testimony was discredited concerning his financial situation. The motion court further held that, because the dissolution court found that the plaintiff had an affair, if the motion were granted it would not likely change the result of the case.

Without hearing any evidence about the need for further discovery, the motion court in effect "demurred." The motion court improperly equated the consequences of the nonsexual extramarital affair that the dissolution court found with adultery, despite the fact that the dissolution court had found there was "no direct evidence" that the affair was sexual in nature. The defendant newly alleged before the motion court that the affair was sexual in nature by virtue of the plaintiff's admission to it.

The General Assembly enacted a statutory provision that a judgment may be opened only if the court is moved to do so within four months of its rendering. See General Statutes § 52-212a. A recent case from our Supreme Court pointed out that it has "recognized that a trial court has inherent power, independent of [any] statutory provisions, to open a judgment obtained by fraud, in the actual absence of consent, or by mutual mistake at any time." (Internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 469, 239 A.3d 272 (2020), citing *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980).[5]

I agree with the defendant's claim that the trial court erred by denying him a postjudgment probable cause hearing to determine whether any discovery beyond the testimony of the parties should be allowed in the future to substantiate the defendant's allegations of fraud. The motion court was in the best position to determine if additional discovery was necessary. But it had to listen to the defendant to find that out. Evidence to be admissible must be properly authenticated. See Conn. Code Evid. § 9-1. "All documents must be authenticated before they are admitted into evidence." E. Pres-

cott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 9.1.2, p. 675. As § 9-1 (a) of the Connecticut Code of Evidence explains, the purpose of authentication is to ensure that the offered evidence "is what its proponent claims it to be." In this matter, the defendant would be obligated to show that the transcript of the text messages was accurate and constituted discourse between the plaintiff and her attorney. It is possible that further discovery might be necessary to authenticate the transcript for admissibility into evidence. See *State* v. *Garcia*, 299 Conn. 39, 57, 7 A.3d 355 (2010) (direct testimony and circumstantial evidence among ways to authenticate writing). My review of the record reveals that no evidence was taken at the hearing on the defendant's motion to open. Although a full scale trial need not occur in order to determine probable cause for purposes of permitting further discovery, I conclude that it accords a person in the defendant's shoes entitlement to a hearing and to show through testimony the need for further discovery. See id., 257.

I next turn to our statutory scheme, which shows a continued recognition of the egregious nature of adultery as a cause of marital breakdowns. Section 46b-40 (f) of our General Statues defines " 'adultery' " as "voluntary sexual intercourse between a married person and a person other than such person's spouse." Adultery such as would constitute grounds for dissolution "will not be inferred from circumstantial evidence unless there is both an opportunity and an adulterous disposition . . . [and] without more does not necessarily compel a conclusion that adultery has occurred." (Citations omitted.) *Turgeon* v. *Turgeon*, 190 Conn. 269, 279, 460 A.2d 1260 (1983). In short, adultery, unless observed "in flagrante delicto," is hard to prove, which explains why the dissolution court did not find as a fact that it had occurred because there was "no direct evidence" of it. However, an admission to such conduct by the plaintiff on her cell phone would constitute strong evidence, if authenticated, that the conduct had occurred. This state allows for divorce upon a finding that the marriage has broken down irretrievably. See General Statutes § 46b-40 (c) (1). Nonetheless, the legislature saw fit to retain adultery as a separate ground for divorce. See General Statutes § 46b-40 (c) (3). This legislative statement evinces a recognition of how serious a form of marital infidelity adultery is. Although § 46b-40 (c) (1) "clearly establishes a state policy recognizing that a marital relationship may terminate in fact without regard to the fault of either marital partner . . . [n]o-fault divorce does not mean that the causes of a marital breakup are always irrelevant . . . ." (Citation omitted; internal quotation marks omitted.) *Posada* v. *Posada*, 179 Conn. 568, 572, 427 A.2d 406 (1980). Adultery, however, can still be relevant in divorce proceedings when considering property division and alimony. See General Statutes §§ 46b-81 (c) and 46b-82

(a).[6] "[A] spouse whose conduct has contributed substantially to the breakdown of the marriage should not expect to receive financial kudos for his or her misconduct." *Robinson* v. *Robinson*, 187 Conn. 70, 72, 444 A.2d 234 (1982). Section 46b-81 (c) specifically requires a trial court to consider "the causes for the . . . dissolution of the marriage" in making decisions as to distribution of property. Similarly, § 46b-82 (a) provides that a trial court, "[i]n determining whether alimony shall be awarded, and the duration and amount of the award . . . shall consider . . . the causes for the . . . dissolution of the marriage . . . ."

In *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005), which concerns the fraud exception in the context of a motion to open a dissolution judgment, our Supreme Court stated that "[f]raud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment."[7] (Internal quotation marks omitted.)

Although our motion to open case law defines "fraud" in the context of a motion to open similar to the definition of fraud in the inducement of the making of a contract or fraud in the execution of it, the defendant's claims do not arise out of a contractual agreement except in the broad sense that the plaintiff and defendant contracted a marriage which has been dissolved. See *Cimino* v. *Cimino*, 174 Conn. App. 1, 8–9, 164 A.3d 787 (motion to open), cert. denied, 327 Conn. 929, 171 A.3d 455 (2017); *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 50–51, 804 A.2d 218 (fraudulent inducement of contract), cert. denied, 262 Conn. 903, 810 A.2d 269 (2002).

In the more pertinent sense, the fraud alleged here relates to the plaintiff's denial of adulterous conduct at trial at the urging of an officer of the court who was her lawyer, who then did not correct his client's false statement but in fact signed the jurat after taking her oath. Black's Law Dictionary defines "fraud" as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." Black's Law Dictionary (7th Ed. 1999), p. 670. That is the type of fraud contemplated as an exception to the four month rule within which motions to open must otherwise be made.[8] If an evidentiary hearing were to be held to determine if probable cause has been established that discovery is necessary for the defendant's newly discovered cell phone evidence, then, if probable cause is established, discovery should be ordered. If the defendant's allegations were substan-

tiated beyond a mere suspicion, the court should have opened the judgment for the limited purpose of discovery. "If the [party seeking to open the judgment] was able to substantiate [his] allegations of fraud beyond mere suspicion, then the court would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held." (Internal quotation marks omitted.) *Spilke* v. *Spilke*, 116 Conn. App. 590, 593 n.6, 976 A.2d 69, cert. denied, 294 Conn. 918, 984 A.2d 68 (2009).

The defendant also challenges the reasons given by the court for the outright denial of his motion. "There are three limitations on a court's ability to grant relief from a dissolution judgment secured by fraud: (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered; (2) there must be clear proof of the fraud; and (3) there is a [reasonable probability] that the result of the new trial will be different. . . . Additionally, the granting of such relief must not unfairly jeopardize interests of reliance that have taken shape on the basis of the judgment." (Citation omitted; internal quotation marks omitted.) *Foisie* v. *Foisie*, 335 Conn. 525, 535–36, 239 A.3d 1198 (2020).

In reviewing the reasons that the court gave for denying the motion to open, I can appreciate that all litigation must come to an end, but I do not agree that the defendant's motion to open was a "third bite at the apple" as the court found. It does not appear from this record that the cell phone evidence was known by the defendant during the defendant's dissolution trial before Judge Carbonneau. The record before us is silent as to whether it became known at the time of his earlier appeal to the Appellate Court or at the time he sought certification from our Supreme Court, but, in any event, because both appellate courts were limited to the record evidence before the dissolution court, neither appellate court could have taken new evidence or made factual findings about it.

The motion court also noted that the dissolution court discredited some of the testimony of both parties, after hearing both the plaintiff's and the defendant's evidence. The dissolution court made factual findings as to the financial circumstances of both parties. Presumably these findings stand as to the defendant's finances because they are not challenged on appeal and would be the matrix for any financial awards. However, I cannot agree that they would bar any relief to the defendant if the defendant is permitted to offer after discovered evidence in support of his motion. Some later conduct cannot cause the breakdown of a marriage that has already broken down irretrievably. This lack of credibility found on the part of the defendant[9] was not the cause of the marriage breakdown because the inconsistencies

and misrepresentations in the defendant's financial affidavit occurred during the pendency of the divorce proceeding, which occurred long after the marriage breakdown had already occurred and, therefore, could not be a factor under the statutes authorizing fault in causing the breakdown to be considered in alimony and property awards. Section 46b-81 (c) expressly provides that, as to the division of marital property, that the court "shall consider" the "causes for the . . . dissolution of the marriage . . . ." Section 46b-82 (a) places a similar obligation on a court in its awards of alimony.

The defendant has made substantial allegations regarding fraud. His evidence deserves to be heard.

I would reverse the judgment and remand the motion to open for further proceedings at which the defendant is permitted to offer his evidence of the plaintiff's admission to adulterous conduct that she had denied at trial.

[1] My analysis is guided by the following standards. An interpretation of what is required by the relevant statute presents a question of law over which our review is plenary. See *Trumbull* v. *Palmer*, 161 Conn. App. 594, 598–99, 129 A.3d 133 (2015), cert. denied, 320 Conn. 923, 133 A.3d 458 (2016). Review of whether the defendant's motion to open was properly denied is examined under an abuse of discretion standard. See *Gaary* v. *Gillis*, 162 Conn. App. 251, 255–56, 131 A.3d 765 (2016).

However, the defendant alleges that he was denied the opportunity to present evidence that the plaintiff was adulterous although she had denied it at trial. Whether due process was denied to offer evidence on a disputed fact is a question of law, over which our review is plenary. "Whether a party was deprived of his due process rights is a question of law to which appellate courts grant plenary review." *McFarline* v. *Mickens*, 177 Conn. App. 83, 100, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018).

[2] The pertinent portion of the defendant's interrogatory to the plaintiff and her answer to it under oath, together with the notarization of it by her attorney, Jeremiah Nii Amaa Ollennu, are as follows. Question 6 of the defendant's interrogatories asked: "Have you had sexual relations with anyone other than your spouse since the date of your marriage?" The plaintiff responded, "No." The notarization on the final page is signed by Ollennu, who wrote "Esq." after his name, and the words "notary public" under the line containing his signature are crossed out, presumably indicating that he signed it as a Commissioner of the Superior Court.

[3] This court stated that the trial court "considered the evidence of the plaintiff's extramarital affair and found that it was not sexual in nature." *Conroy* v. *Idlibi*, 183 Conn. App. 460, 464, 193 A.3d 663, cert. denied, 330 Conn. 921, 194 A.3d 289 (2018). I agree with the defendant that this overstates what the trial court found. The trial court found only that there was "no direct evidence of [the plaintiff] and [Jones] ever having sex."

[4] The defendant further alleged in his motion to open that the plaintiff had fabricated an incident of assault with self-inflicted wounds to falsely accuse the defendant of a brutal assault and falsely testified during the divorce proceedings that the defendant had assaulted her. Although the defendant wants to again probe into the merits of the plaintiff's dismissed criminal assault complaint, because the dissolution court did not find that the defendant had assaulted the plaintiff, I agree with Judge Connors that, even if he could prove that there were no assault, doing so would be unlikely to change the result of the awards in the dissolution judgment and that therefore there was no need to retry that issue.

[5] Our common law in part derives from English common law. There is an historic recognition in the literature of English speaking peoples that fraud, if found to exist, must be rooted out. "The Principal Dutie of a Judge, is to suppress Force and Fraud; wherof Force is the more Pernicious, when it is Open; and Fraud when it is Close and Disguised." Sir Francis Bacon, The Essayes or Counsels, Civil and Morall, Essay LVI, Of Judicature, Edited by Michael Kiernan, Harvard University Press, 1985.

[6] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a

complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect. (b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.(c) In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

General Statutes § 46b-82 provides: "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment. (b) If the court, following a trial or hearing on the merits, enters an order pursuant to subsection (a) of this section, or section 46b-86, and such order by its terms will terminate only upon the death of either party or the remarriage of the alimony recipient, the court shall articulate with specificity the basis for such order. (c) Any postjudgment procedure afforded by chapter 9061 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of alimony."

[7] Furthermore, "[t]here are three limitations on a court's ability to grant relief from a dissolution judgment secured by fraud: (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered; (2) there must be clear proof of the fraud; and (3) there is a substantial likelihood that the result of the new trial will be different." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, supra, 275 Conn. 685. In the present case, where there exists no claim of undue delay, our review is limited to "whether there was sufficient proof of fraud and whether the result in a new trial would differ." Id., 686.

[8] The defendant conceded at oral argument that he was not claiming "fraud on the court" because he had not joined in it. Our Supreme Court has decided, in the case of *Billington* v. *Billington*, supra, 220 Conn. 224–25, "that the concept of fraud on the court in the marital litigation context is properly confined to situations where both parties join to conceal material information from the court."

[9] The dissolution court determined that "[t]he mistakes, omissions, misrepresentations, inconsistencies and irregularities in his sworn financial affidavits damaged the defendant's credibility in the eyes of the court, especially in financial matters and values."