******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

KATIE N. CONROY *v.* AMMAR A. IDLIBI
(AC 39538)

Alvord, Keller and Bishop, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving his marriage to the plaintiff. The trial court found that the marriage had broken down irretrievably, without allocating fault for the breakdown, and issued certain orders for the payment of alimony and the distribution of property. On appeal, the defendant claimed that the trial court erred by finding that neither party bore greater responsibility for the breakdown of the marriage and in making financial awards that were favorable to the plaintiff. *Held*:

1. The trial court's factual finding that neither party was more responsible than the other for the breakdown of the marriage was supported by the evidence and was not clearly erroneous; although the defendant claimed that the court should have found that the plaintiff bore greater responsibility for the breakdown of the marriage because she had engaged in a sexual extramarital affair, the court considered the evidence of the plaintiff's affair and found that it was not sexual in nature, and the record provided an ample basis to conclude that, despite the evidence of the plaintiff's alleged affair, both parties bore some responsibility for the breakdown of the marriage, as the plaintiff's testimony, which the court was free to credit, provided an account of the defendant's attempts to control varied aspects of her life and allegations against the defendant of physical abuse, which left the court to balance the evidence of the plaintiff's affair with the defendant's own misconduct.

2. The trial court did not err in making its financial awards; a review of the record showed that the court properly considered the appropriate statutory factors and that the awards were both supported by the evidence and within the parameters of the court's discretion, as the defendant's claims were premised on the argument that because the court did not find that the plaintiff's extramarital affair was the cause of the breakdown of the marriage, the court abused its discretion by not considering that fault when making the financial awards, and this court determined that the trial court did not err by finding that neither party was more at fault for the breakdown of the marriage.

Argued February 20—officially released July 17, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Carbonneau, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court; thereafter, the court, *Carbonneau, J.*, denied the defendant's motion for modification of alimony; subsequently, the court, *Carbonneau, J.*, denied the plaintiff's motion for contempt. *Dismissed in part; affirmed.*

*Tareq Al Ahmad*, for the appellant (defendant).

*Jeremiah Ollennu*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant, Ammar A. Idlibi, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Katie N. Conroy. The defendant claims that the court erred (1) by finding that neither party bore greater responsibility for the breakdown of the marriage and (2) in making financial awards that were favorable to the plaintiff.[1] We affirm the judgment of the court.[2]

The court found the following facts. In 2005, the plaintiff, when she was eighteen years old and while living in California, began to communicate with the defendant over the internet. The plaintiff was estranged from her mother at the time and living with her grandmother. At first, the plaintiff and the defendant discussed the plaintiff's interest in the defendant's faith, Islam. The topic of conversation quickly shifted from the defendant's faith to marriage. "About three weeks after meeting online, [the] defendant flew to California, picked up [the] plaintiff, brought her to Connecticut and they married."

Initially, the plaintiff and the defendant were happily married. The defendant, a dentist, opened his own practice in 2007. His high income level from this practice enabled the parties to enjoy a lavish lifestyle. They had three children during the marriage.

Despite initial marital bliss, "[t]he seeds of this dissolution were sown at the very time the relationship began." The plaintiff alleged that the defendant exerted overbearing control over many aspects of her life and that he physically assaulted her. The defendant harbored suspicions that the plaintiff was unfaithful during the marriage. The defendant's dental practice also went through down periods, placing financial strain upon them and forcing the plaintiff to loan the business the total balance of an education fund, about $132,000, left to her by her deceased father.

The plaintiff commenced this proceeding on May 19, 2015, seeking to dissolve her ten year marriage to the defendant. Following a trial, the court, on August 15, 2016, rendered a judgment of dissolution, finding that the marriage had broken down irretrievably. The court did not allocate fault for the breakdown of the marriage. Pursuant to the dissolution decree, the court made certain orders for the payment of alimony and the distribution of property.[3]

I

The defendant first claims that the court should have found that the plaintiff was at fault for the breakdown of the parties' marriage due to an alleged affair.

The court made the following findings relevant to this claim. "The marriage of the parties is dissolved on the grounds of irretrievable breakdown. Both parties

are declared to be single and unmarried." The court "ascribe[d] no greater fault for the breakdown of the marriage to either party." With respect to the alleged affair, the court, having considered the allegation that the plaintiff engaged in a relationship during the marriage with another man named George Jones, found that there was "no direct evidence of [the plaintiff] and [Jones] ever having sex."

"The trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence . . . ." (Internal quotation marks omitted.) *Marinos* v. *Building Rehabilitations, LLC*, 67 Conn. App. 86, 89, 787 A.2d 46 (2001). "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 137, 822 A.2d 294, cert. denied, 264 Conn. 921, 828 A.2d 617 (2003).

After carefully reviewing the evidence, we conclude that the court's factual finding that neither party was more responsible than the other for the breakdown of the marriage was not clearly erroneous. The defendant argues that the court should have found that the plaintiff bore greater responsibility for the breakdown of the marriage because she engaged in a sexual extramarital affair. The court considered the evidence of the plaintiff's extramarital affair and found that it was not sexual in nature. The plaintiff, although admitting during her testimony that she had an affair with Jones, did not state that she had a sexual relationship with him. The court was free to credit her testimony. In addition, the record provides an ample basis to conclude that, despite the evidence of the plaintiff's alleged affair, both parties were responsible for the breakdown of the marriage. The plaintiff's testimony provides an account of the defendant's attempts to control varied aspects of her life and allegations of physical abuse. This left the court to balance the evidence of the plaintiff's affair with the defendant's own misconduct. Accordingly, the court's finding that neither party was more at fault for the breakdown of the marriage was supported by the evidence and, thus, it was not clearly erroneous.

II

The defendant claims that the court erred in making several financial awards. Specifically, the defendant claims that the court erred in (1) setting the amount and duration of alimony; (2) rendering a monetary judgment in favor of the plaintiff; (3) allowing the plaintiff to take sole possession of certain marital property; (4)

finding that he should be solely liable for certain debts; and (5) awarding the plaintiff attorney's fees.

The court found the following facts relevant to this claim. "This is a ten year marriage. The plaintiff is twenty years younger than [the] defendant. Both are now highly stressed by the breakdown of their marriage and the ensuing conflict resulting in their numerous, adversarial and tension-filled appearances in various courtrooms. [The] plaintiff suffers from temporary or treatable conditions, and [the] defendant is relatively healthy for his age. They lived a high [lifestyle] thanks to [the] defendant's many years of training and his earnings as a dental specialist. The lurid drama of this dissolution and the other court proceedings will eventually fade from public view. [The] defendant's dental practice will recover, giving him a greater capacity than [the] plaintiff for future acquisition of capital assets and income. However, [the] plaintiff is—using [the] defendant's words—'intelligent and capable.' While her vocational skills and employability may be limited now, she has many years to seek an education or training in order to provide for herself and the support of her children."

The court found that there should be "a sufficient amount of rehabilitative alimony flowing from [the] defendant to [the] plaintiff for a term allowing [the] plaintiff a realistic opportunity to seek education or vocational training . . . . [O]ne or both of these parents may in the future have a support obligation to their children. Such a future support obligation shall not be considered a substantial change of circumstances to raise or lower alimony because the court took these circumstances into account when deciding its alimony order."

The court ordered that the defendant "shall pay $1250 per week alimony to [the] plaintiff for a term of five years from the date of this decision. Such alimony shall be taxable income to [the] plaintiff and deductible to [the] defendant. The term of the alimony is nonmodifiable. . . . Alimony ends upon the death of either party or [the] plaintiff's remarriage. The terms of [General Statutes §] 46b-86 (b) are incorporated by reference into these orders."

With respect to property distributions, the court issued the following orders: "[The] defendant shall immediately transfer by means of a qualified domestic relations order (QDRO) one half . . . of his RBC Wealth Management retirement account . . . that accrued from the date of the marriage to the date of this decision plus gains and losses incurred from the date of the decision until the date of distribution. [The] defendant may choose a qualified professional to assist in the preparation of such an order. He shall be solely responsible for any and all costs of preparation or implementation. The court retains jurisdiction over the preparation and effectuation of any QDRO. . . .

"[The] plaintiff shall keep all other personal property now in her possession without further claim by [the] defendant. . . .

"[The] defendant shall pay [the] plaintiff a lump sum property settlement of $132,000 on or before five years from the date of this decision."

With respect to the debts, the court made the following factual findings. "[The] defendant shall be solely responsible for the timely payment of all debts listed under 'III Liabilities,' including the addendum for this category, on his May 23, 2016 financial affidavit. These debts include the full amounts owed to the Internal Revenue Service and Connecticut's Department of Revenue Services.

"[The] defendant shall also be solely responsible for the timely payment of the following debts listed by [the] plaintiff on her May 11, 2016 financial affidavit: 'Federal Tax Lien,' CCMC (children's care/copay) and four bills to Bristol Hospital totaling $474. He shall hold her harmless thereon. If [the] plaintiff provides written proof of her payment of any of these bills, then [the] defendant shall reimburse her for that which she paid. Otherwise, he may pay the provider directly. . . .

"[The] plaintiff shall be solely responsible for all other debts listed on her May 11, 2016 financial affidavit. She shall hold [the] defendant harmless thereon." (Footnote omitted.)

With respect to attorney's fees, the court found that "[the] defendant has been the sole support of this family since 2008. [The] plaintiff has not worked outside her home since that time, and she suffers from a medical condition that currently keeps her from working. She has no substantial assets or resources upon which she may draw except from [the] defendant. . . . The court previously ordered [the] defendant to pay [the] plaintiff an allowance to prosecute of $5000 . . . and an additional $2500 later on." (Citations omitted.)

The court ordered that the "defendant shall pay the sum of $12,500 toward [the] plaintiff's attorney's fees as follows: $2500 by December 31, 2016, $5000 by June 30, 2017, and $5000 by December 31, 2017."

"An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such

personal factors such as the demeanor and the attitude of the parties are so significant. . . .

"Importantly, [a] fundamental principle in dissolution actions is that a trial court may exercise broad discretion in . . . dividing property as long as it considers all relevant . . . criteria [in General Statutes § 46b-81].[4] . . . While the trial court must consider the delineated statutory criteria [when allocating property], no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. . . . In dividing up property, the court must take many factors into account. . . . A trial court, however, need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Footnote added; internal quotation marks omitted.) *Kent* v. *DiPaola*, 178 Conn. App. 424, 431–32, 175 A.3d 601 (2017).

"The generally accepted purpose of . . . alimony is to enable a spouse who is disadvantaged through divorce to enjoy a standard of living commensurate with the standard of living during marriage. . . . In addition to the marital standard of living, the trial court must also consider the factors in [General Statutes] § 46b-82 when awarding alimony. . . .

"General Statutes § 46b-82 (a) provides in relevant part that [i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the [division of property made] pursuant to [General Statutes §] 46b-81 . . . ." (Citations omitted; internal quotation marks omitted.) *Horey* v. *Horey*, 172 Conn. App. 735, 740–41, 161 A.3d 579 (2017). "The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . We note also that [t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor. . . .

"[T]he record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand." (Citation omitted;

internal quotation marks omitted.) Id., 741.

"General Statutes § 46b-62 governs the award of attorney's fees in dissolution proceedings. That section provides in part that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [§] 46b-82." (Footnote omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 542, 752 A.2d 978 (1998). "[These criteria include] the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . . In making an award of attorney's fees under [§ 46b-82], [t]he court is not obligated to make express findings on each of these statutory criteria. . . .

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . Whether to allow counsel fees [under § 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citations omitted; internal quotation marks omitted.) Id., 542–43.

Our review of the record leads us to conclude that the court properly considered the appropriate statutory factors and that the awards made by the court were both supported by the evidence and within the parameters of the court's discretion. The defendant's claims are premised on the argument that because the court did not find that the plaintiff's affair was the cause of the breakdown of the parties' marriage, the court abused its discretion by not considering that fault when making financial awards. As previously discussed in this opinion, however, the court did not err by finding that neither party was more at fault for the breakdown of the marriage. Thus, the defendant's claims warrant no further review.

The portion of the defendant's appeal challenging the trial court's finding that if he obtains a monetary judgment against the plaintiff in a separate proceeding, that shall be considered a significant change in circumstances to warrant a review of the defendant's alimony obligation is dismissed. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] At oral argument, the defendant waived his claim that "the trial court err[ed] by awarding [the] plaintiff attorney's fees postjudgment while an appeal is pending."

The defendant also claims that the court made improper credibility determinations. "An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences from them." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, 174 Conn. App. 1, 11, 164 A.3d 787, cert. denied, 327 Conn. 929, 171 A.3d 455 (2017). Mindful of these principles, we decline to review the court's credibility determinations.

[2] We dismiss the portion of the appeal in which the defendant claims that the trial court improperly determined that if the plaintiff is found to be liable to the defendant in a separate matter commenced by the defendant, that finding shall be deemed a substantial change in the plaintiff's circumstances to warrant a review of the defendant's alimony obligation because it is moot. We take judicial notice that the defendant has withdrawn the separate action. As a result, this claim is moot. See *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004).

[3] The court did not make findings with regard to child custody. The court noted that "there is an ongoing proceeding before the Juvenile Court against [the] plaintiff and [the] defendant" and, as a result, left any determinations on custody to that court. At the time of oral argument, the state had custody of the parties' children.

[4] General Statutes 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

———————————————