******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

KATIE N. CONROY *v.* AMMAR A. IDLIBI
(AC 42416)

Lavine, Alexander and Flynn, Js.*

*Syllabus*

The defendant, whose marriage to the plaintiff had previously been dissolved, appealed to this court from the decision of the trial court denying his motion to open the judgment of dissolution on the basis of fraud. The defendant claimed that the plaintiff had committed a fraud on the dissolution court because she misrepresented the nature of her extramarital relationship and her allegations of physical abuse by the defendant. The trial court denied the motion to open, concluding that the dissolution court was aware of the defendant's claims regarding the plaintiff's alleged misrepresentations when it issued the dissolution judgment. *Held* that the trial court did not abuse its discretion in denying the defendant's motion to open; that court correctly concluded that there was not a substantial likelihood that the outcome of a new trial would be different because the dissolution court was aware of the defendant's claims that the plaintiff had misrepresented the nature of her extramarital relationship and that the injuries the plaintiff claimed were caused by the defendant were really self-inflicted, there was no evidence that the dissolution court relied on the plaintiff's alleged misrepresentations in issuing the dissolution judgment, and the cause of the breakdown of the marriage was just one of a variety of factors the court considered in making its financial orders.

(*One judge dissenting*)

Argued September 21, 2020—officially released May 4, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Carbonneau, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court, *Alvord, Keller* and *Bishop, Js.*, which affirmed the judgment of the trial court; thereafter, the court, *Connors, J.*, denied the defendant's motion to open the judgment, and the defendant appealed to this court. *Affirmed.*

*Ammar A. Idlibi*, self-represented, the appellant (defendant).

*Opinion*

LAVINE, J. The self-represented defendant, Ammar A. Idlibi, returns to this court in his continuing effort to reverse the judgment of the trial court dissolving his marriage to the plaintiff, Katie N. Conroy. In the present appeal, the defendant claims that the trial court, *Connors, J.*, abused its discretion (1) by denying his motion to open based on fraud (motion to open) and (2) by failing to conduct an evidentiary hearing.[1] We affirm the judgment of the trial court.

A brief review of the procedural history of the present case provides context for the defendant's claims. The plaintiff commenced an action for dissolution of marriage on May 26, 2015,[2] and a trial was conducted in May, 2016. The dissolution court, *Carbonneau, J.*, issued a memorandum of decision dissolving the parties' marriage and issuing certain orders on August 15, 2016.[3] The defendant appealed to this court from the judgment of dissolution, claiming that the dissolution court had "erred (1) by finding that neither party bore greater responsibility for the breakdown of the marriage and (2) in making financial awards that were favorable to the plaintiff." *Conroy* v. *Idlibi*, 183 Conn. App. 460, 461, 193 A.3d 663, cert. denied, 330 Conn. 921, 194 A.3d 289 (2018). This court affirmed the judgment;[4] id.; and our Supreme Court denied the defendant's petition for certification to appeal. *Conroy* v. *Idlibi*, 330 Conn. 921, 194 A.3d 289 (2018). The parties have filed multiple postdissolution motions in the trial court, including motions to modify alimony filed by the defendant.[5] See *Wasson* v. *Wasson*, 91 Conn. App. 149, 151 n.1, 881 A.2d 356 (appellate courts like trial court may take judicial notice of Superior Court files in same or other cases), cert. denied, 276 Conn. 932, 890 A.2d 574 (2005). On October 29, 2018, the defendant, representing himself, filed the motion to open at issue in the present appeal. The substance of the motion to open is the defendant's claim that the plaintiff had committed a fraud upon the dissolution court because she was not truthful about the nature of her extramarital relationship and her allegations of physical abuse by the defendant. Following a hearing held on December 10, 2018, Judge Connors denied the motion to open. The defendant appealed.

The following facts as found by the dissolution court are relevant to the defendant's claims in the present appeal. The plaintiff grew up in California. Her father died when she was two years old and left her a substantial education fund. In 2005, when she was eighteen years old, the plaintiff "began to communicate with the defendant over the Internet. The plaintiff was estranged from her mother at the time and living with her grandmother. At first, the plaintiff and the defendant discussed the plaintiff's interest in the defendant's faith, Islam. The topic of conversation quickly shifted from the defendant's faith to marriage." *Conroy* v. *Idlibi*,

supra, 183 Conn. App. 462. At trial, the defendant claimed that the plaintiff wanted him to rescue her from the control of her mother and family. The defendant informed the plaintiff that their talk of a life together could only happen if they were married given his devout religious beliefs. "About three weeks after meeting online, [the] defendant flew to California, picked up [the] plaintiff, brought her to Connecticut and they married." (Internal quotation marks omitted.) Id.

The dissolution court also found that the early years of the parties' marriage were happy. The defendant's dental practice thrived, and the couple lived a lavish lifestyle. The plaintiff adhered to a specific dress code and diet, and eschewed contact with males who were not her husband. The court also found that at about the time the parties' first child was born, however, the plaintiff began to resent and resist the religious dictates of the marriage. She complained that the defendant came to control every aspect of her life. At trial, the plaintiff claimed that the defendant permitted only certain clothes and food for her and their children and that her only friends were women from their religious circle. She also claimed that she was not permitted to listen to certain music, leave her home, or communicate with her family. The plaintiff, however, had returned to California several times to see her family. At trial, she also alleged that the defendant's physical abuse of her began "about five years ago."

The dissolution court found that, at the time of trial, the defendant was forty-nine years old. He had been married twice before and had three children from those marriages. He grew up in Syria and received his dental education and training in the United States. At first, he worked as a pediatric dentist for others but, in 2007, the defendant opened his own dental practice. He earned as much as $600,000 to $900,000 per year. In 2008 and early 2009, the defendant felt a great deal of financial pressure. The plaintiff withdrew her college education fund of $132,000 and gave it to the defendant as an investment in his dental practice that he was to repay in the future. Following publicity about an incident of domestic violence between the parties, which resulted in criminal charges being filed against the defendant, the defendant's dental practice again suffered difficulties.

The dissolution court found that at trial both of the parties damaged their credibility. Detective Damien Bilotto of the Plymouth Police Department investigated an incident at the marital home in July, 2015. The court highly credited Bilotto's testimony. During the investigation, the "[p]laintiff declined to answer [Bilotto's] questions not once but twice about the sequence of events that occurred on July 29, 2015, between her and [the defendant]. Despite his thorough investigation, the detective could not rule out that [the] plaintiff's injuries

were self-inflicted when she accused [the defendant] of a brutal assault." The court also found that, "[w]hile the wording of the defendant's interrogatories dated September 30, 2015, concerning [the] plaintiff's extramarital relationships may have been imprecise, [the] plaintiff's responses–under oath–were less than forthcoming. The plaintiff's recollection of her relationship with [another man] was vague. Her testimony about having lost her 'last opportunity' to attend college—at age twenty-nine—was not credible nor was her description of the extent and permanence of her medical conditions."

The dissolution court found that the defendant damaged his credibility due to mistakes, omissions, oversights and nondisclosures on his eleven sworn financial affidavits. The defendant explained that "he was not diligent in reviewing" his affidavits, that he "trusted his accountant," and that he is "not good" with numbers. Nevertheless, the court found that the defendant had sworn to the accuracy of the statements. See *Reville* v. *Reville*, 312 Conn. 428, 442, 93 A.3d 1076 (2014) (court entitled to rely on truth and accuracy of sworn statements).

Regarding the division of the parties' material and financial resources, the dissolution court stated: " 'There are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within [General Statutes] § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution). *Krafick* v. *Krafick*, 234 Conn. 783, 792–93, 663 A.2d 365 (1995)." The court then made the following findings with regard to the equitable distribution of the parties' resources.

"This is a ten year marriage. The plaintiff is twenty years younger than the defendant. . . . The plaintiff suffers from temporary or treatable conditions, and the defendant is relatively healthy for his age. They lived a high lifestyle thanks to the defendant's many years of training and his earnings as a dental specialist. The lurid drama of this dissolution and other court proceedings will eventually fade from public view. The defendant's dental practice will recover, giving him a greater capacity than the plaintiff for future acquisition of capital assets and income. However, the plaintiff is—using the defendant's words—'intelligent and capable.' [Although] her vocational skills and employability may be limited now, she has many years to seek an education or training in order to provide for herself and the support of her children.

"The seeds of this dissolution were sown at the very time the relationship began. The plaintiff was an eighteen year old high school student rebelling against her

mother's 'control.' The defendant, twenty years the plaintiff's senior, cannot now be surprised that the plaintiff is once again rebelling to escape perceived control. *The court has considered her relationship with another man during the marriage.* The court *finds no direct evidence* of her and this other man ever having [had] sex. The court does not condone either party's behaviors or actions. As parents, they should each be ashamed that neither of them has cared for or supported their children for nearly a year. However, the court ascribes no greater fault for the breakdown of the marriage to either party." (Emphasis added.)

Citing General Statutes § 46b-82, the statute that governs alimony awards, the dissolution court noted that that the statute requires it to "consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to . . . § 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment in ordering either party to pay alimony to the other. . . . In particular, *rehabilitative alimony, or time limited alimony, is alimony that is awarded primarily for the purpose of allowing the spouse who receives it to obtain further education, training, or other skills necessary to attain self-sufficiency.* . . . Rehabilitative alimony is not limited to that purpose, however, and there may be other valid reasons for awarding it. [Citations omitted.] *Bornemann* v. *Bornemann*, 245 Conn. 508, 539–40, 752 A.2d 978 (1998)." (Emphasis added; internal quotation marks omitted.)

Pursuant to its earlier analysis, the dissolution court concluded that "a sufficient amount of rehabilitative alimony flowing from the defendant to the plaintiff for a term allowing the plaintiff a realistic opportunity to seek education or vocational training is fair and equitable. The court understands that the one or both of these parents may in the future have a support obligation to their children. Such a future support obligation shall not be considered a substantial change of circumstances to raise or lower alimony because the court took these circumstances into account when deciding its alimony order."

In addition to dissolving the parties' marriage on the ground of irretrievable breakdown, the dissolution court ordered, among other things,[6] that the defendant shall pay the plaintiff $1250 per week for a nonmodifiable term of five years from the date of the court's decision.[7] The defendant also was ordered to pay the plaintiff a lump sum property settlement of $132,000 on or before five years from the date of the court's

decision and $12,500 toward the plaintiff's attorney's fees. The parties were responsible for their individual debts. The defendant retained his interest in his various dental practices.[8]

Following the rendering of the dissolution judgment, the defendant appealed to this court, claiming that the dissolution court erred (1) by finding that neither party bore greater responsibility for the breakdown of the marriage and (2) by making financial awards that were favorable to the plaintiff. See *Conroy* v. *Idlibi*, supra, 183 Conn. App. 361. With respect to his first claim, the defendant argued "that the court should have found that the plaintiff bore greater responsibility for the breakdown of the marriage because she engaged in a sexual extramarital affair." Id., 464.

This court reviewed the evidence and concluded that the "court's factual finding that neither party was more responsible than the other for the breakdown of the marriage was not clearly erroneous." Id. This court reasoned that the dissolution court "considered the evidence of the plaintiff's extramarital affair and found that it was not sexual in nature. The plaintiff, although admitting during her testimony that she had an affair . . . did not state that she had a sexual relationship with [the man]. The court was free to credit her testimony. In addition, the record provides an ample basis to conclude that, despite the evidence of the plaintiff's alleged affair both parties were responsible for the breakdown of the marriage. The plaintiff's testimony provides an account of the defendant's attempts to control varied aspects of her life and allegations of physical abuse. This left the court to balance the evidence of the plaintiff's affair with the defendant's own misconduct." Id.

With respect to the defendant's claim regarding the dissolution court's financial awards, this court reviewed the financial awards in detail. See id., 465–69. This court noted that "[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Internal quotation marks omitted.) Id., 467. Moreover, "[a] fundamental principle in dissolution actions is that a trial court may exercise broad discretion in . . . dividing property as long as it considers all relevant . . . criteria in [§] 46b-81. . . . While the trial court must consider the delineated statutory criteria [when allocating property], no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case." (Footnote omitted; internal quotation marks omitted.) Id., 468.

As to alimony, this court set forth the applicable statutory provisions: "The generally accepted purpose

of . . . alimony is to enable a spouse who is disadvantaged through divorce to enjoy a standard of living commensurate with the standard of living during the marriage. . . . In addition to the marital standard of living, the trial court must also consider factors in . . . § 46b-82 when awarding alimony. . . .

"[Section] 46b-82 (a) provides in relevant part that [i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocation skills, education employability, estate and needs of each of the parties and the [division of property made] pursuant to [§] 46b-81 . . . ." (Internal quotation marks omitted.) Id., 468–69, quoting *Horey* v. *Horey*, 172 Conn. App. 735, 740–41, 161 A.3d 579 (2017).

This court's review of the record of the divorce proceedings led it "to conclude that the [dissolution] court properly considered the appropriate statutory factors and that the awards made by the court were both supported by the evidence and within the parameters of the court's discretion. The defendant's claims are premised on the argument that because the court did not find that the plaintiff's affair was the cause of the breakdown of the parties' marriage, the court abused its discretion by not considering that fault when making financial awards. As previously discussed in this opinion, however, the court did not err by finding that neither party was more at fault for the breakdown of the marriage." *Conroy* v. *Idlibi*, supra, 183 Conn. App. 470–71.

After this court affirmed the judgment of the dissolution court; id., 471; the defendant filed a petition for certification to appeal to our Supreme Court. The petition for certification was denied. *Conroy* v. *Idlibi*, supra, 330 Conn. 921. Thereafter, on October 29, 2018, the defendant filed the motion to open that is the subject of the present appeal.

In his motion to open,[9] the defendant asserted that the plaintiff commenced an action for dissolution of marriage against him on May 26, 2015, and that, in June, 2015, she disclosed to her counsel that she was having sexual relations with another man. On February 29, 2016, the plaintiff's counsel submitted the plaintiff's sworn answers to the defendant's interrogatories. In response to an interrogatory asking, "[h]ave you had sexual relations with anyone other than your spouse since the date of your marriage," the plaintiff answered "no."

The defendant's motion to open claims that, on April 4, 2016, Bilotto issued a police report, which disclosed a sexual relationship between the plaintiff and another

man. The defendant claims that during the dissolution trial, on May 17, 2016, the plaintiff falsely testified under oath that the defendant had assaulted her. Moreover, he claims that, on July 7, 2016, the plaintiff testified in a civil proceeding that she had informed her counsel of her affair with another man before she signed the sworn answers to the defendant's interrogatories. On September 28, 2016, the criminal charges against the defendant were dismissed.

The motion to open continues with allegations that, in its memorandum of decision, the dissolution court credited the plaintiff's false interrogatory answer relating to her relationship with another man and that the false answer had a direct bearing on the dissolution judgment. Quoting from the memorandum of decision, the motion to open states that "[t]he court has considered [the plaintiff's] relationship with another man during the marriage. The court finds no direct evidence of her and this other man ever having sex."

In addition, the motion to open asserted that, in his appeal to this court, the defendant cited the dissolution court's crediting the plaintiff's false answer in denying her sexual relationship with another man as one of the grounds for the appeal. The defendant also claimed that approximately one year after the dissolution court rendered its judgment, the Plymouth Police Department released a record of the plaintiff's text messages that had been extracted from her cell phone. The defendant asserted that the extracted text messages disclosed a graphic sexual relationship between the plaintiff and another man spanning more than one year prior to the plaintiff's filing for a divorce. The defendant asserted that this court affirmed the judgment of the dissolution court, "including the [dissolution] court's finding that the plaintiff did not have a sexual relationship with [another man] while married to the defendant." The defendant claimed that he was aggrieved by the effect of the plaintiff's fraud on the dissolution court's judgment due to the plaintiff's having denied that she had a sexual relationship with another man and accusing the defendant of having assaulted her.

The defendant argued in the motion to open that the "four elements of fraud are clearly met in this case"; see footnote 9 of this opinion; and there had been no laches or unreasonable delay in filing the motion to open. The defendant further argued that there was "clear proof of perjury and fraud by the plaintiff" and that there "is a substantial likelihood that the result of the new judgment will be different." The defendant sought a preliminary hearing to demonstrate probable cause to sustain the validity of the claimed fraud so that he could conduct further discovery.

Judge Connors held a hearing on the motion to open on December 10, 2018. At the conclusion of the hearing, Judge Connors denied the defendant's motion to open

but did not issue a memorandum of decision.[10]  The defendant did not seek an articulation of the court's decision. We, however, are able to discern the basis of Judge Connors' decision from the following colloquy that took place between the court and the defendant during the hearing:

"The Court: I read [your motion to open] today . . . but my concern is that it seems like this is now like the third bite at the apple because you've already had the opportunity to have this heard by [the dissolution court] and then the Appellate Court and then the Supreme Court and, as I understand your argument, your concern is that [the dissolution court] . . . made [its] decision based upon the fact that [the plaintiff] was not involved in a sexual relation—

"[The Defendant]: Correct.

"The Court: —with that individual.

"[The Defendant]: Yes, Your Honor. And that . . . I assaulted her also. There's two areas of fraud that I'm alleging. . . .

* * *

"[The Defendant]: [W]hen I felt that there was fraud, I thought that it had to be—the remedy would be to pursue it through the appeal process. And . . . apparently, in the appeal process you aren't able to present any evidence of allegations of fraud because the Appellate Court will look at the existing evidence and will only tackle errors which were no errors—it found no errors and upheld the judgment.

"Therefore . . . what I'm alleging is the [fraud], obviously, the same fraudulent evidence that [the dissolution court] relied was also relied on by the Appellate Court and that's how the judgment was upheld. But then I found out clearer, through some research, that there was actually . . . this avenue to file a motion to open judgment based on fraud . . . .

* * *

"The Court: Well . . . even if we took . . . this is sort of a complicated area of the law in some respects. You may be getting into what—what we call, under the law of *Oneglia* that there is an *Oneglia* hearing[11] . . . . [T]he problem that I have with your case is that the basis is you saying that your former wife had a sexual relationship with [another man] . . . [a]nd that she made false allegations that you assaulted her. . . . Now . . . the difference between your case and the other cases is, both of those factors were known to [the dissolution court] at the time of the trial. [The dissolution judge], quite truthfully, discredited both of you in your testimony. He didn't find your former wife to be particularly honest on those issues, nor did he find you to be wholly credible on some of the financial issues. . . .

"So there's no need, in my mind, to—to open to do the—the initial hearing to see if there is probable cause because [the dissolution court] acknowledged that there was evidence that your wife was involved with [another man]. What you don't like is that [the dissolution court] said there was no concrete evidence that she was actually having sexual relations with him. Although, [the dissolution court was] well aware that your opinion was that she was having sex during the marriage and her testimony was that she was not. And then you found the information that you brought up from the cell phone, the text message. . . .

"[T]he Appellate Court has already reviewed that, as well. And I know that while it may be difficult for you to come to terms with, fault, in a divorce, is just one of the many elements—one of eighteen criteria that a judge has to consider when dividing up the assets and [the dissolution court] was well aware that your wife was involved in a relationship whether it was sexual or emotional. I mean I think most people will find that sometimes emotional relationship, from what I read, [the court] found that your former wife was involved at least for a year with this individual. . . .

"[The Defendant]: If I . . . may read from the memorandum of the decision by . . . [the dissolution judge]. . . . '[P]laintiff denied sexual relationship prior to the divorce filing with . . . anyone . . . in her sworn answers to defendant's interrogatories, dated February 29, 2016.' . . .So he, basically, credited that.

"The Court: No, he did not. What he said was that's her testimony. . . . When judges write, we say I find or the court finds. That is not a finding by the court. What the court is saying is that that's what she testified to. He goes on to say he did not find her credible . . . and her story did not add up.

"[The Defendant]: [I]f I may go to the second page . . . .'The court has considered her relationship with another man during the marriage. The court finds no direct evidence of her and this other man ever having sex. . . . So there's . . . a finding by the court . . . [a]nd that's based on a fraud by the plaintiff. . . .

* * *

"The Court: [T]his is just to open your judgment based on fraud. And this is not the type of fraud—you're trying to say that there was a fraud because she—let's say she lied, let's use that word. . . . She lied and said she wasn't having sex with [another man] and she was. . . . The judge [was] well aware that that's what the issue was and . . . that's not going to give me enough to go back and open a judgment when [the dissolution court] knew you were saying that, the Appellate Court knew you were saying that, the Supreme Court knew you were saying that.

"So, initially, the situation with these cases, when we go back this far to open . . . we're doing the discovery to see whether there's a probable cause. . . . I would concede that had there been an issue and you didn't know about that, then maybe there was probable cause now that you have cell phone records, but even knowing that . . . and the other stuff. It's got to be likely to change the outcome. It's highly unlikely that whether she was having sexual relations with [another man] or not, would have affected [the dissolution court's] decision at all." (Footnote added.)

The defendant argued to Judge Connors, on the basis of *McPhee* v. *McPhee*, 186 Conn. 167, 177, 440 A.2d 274 (1982), that "a spouse whose conduct has contributed substantially to the breakdown of the marriage should not expect to receive financial kudos for—for his or her misconduct. Moreover, in considering the gravity of such misconduct, it is entirely proper for the court to assess the impact of the . . . spouse's conduct on the other spouse." He argued that there is nothing more grave than accusing a spouse of an assault and causing the spouse to be arrested and this could be a factor in revising the judgment of dissolution.

Judge Connors disagreed with the defendant, stating: "I strongly disagree with you. I—I've read through [the dissolution court's] decision. . . . Judge Keller, who authored the opinion for the Appellate Court, was well aware that that was the allegation. [The dissolution judge] carefully set out in his memorandum of decision that even the—the criminal case was pending—he had—he had the information. He knew about it. He questioned the veracity of [the plaintiff] and yet still found, as he did.

"As I've indicated, every case is . . . very fact specific and, as you know from your appellate experience and I think Judge Keller articulated it. On appeal, you have to show that it was clearly erroneous. It's very difficult to show that a decision was clearly erroneous and [the dissolution judge] did really a very phenomenal job of outlining what he relied upon and put that evidence in there. Had he not mentioned it [at] all, maybe there's a claim. He was aware that there was the assault charge against you. He was aware that he didn't find her to be credible in that regard, that there was the issue as to whether—you said it was self-inflicted. You denied it from the beginning and testified that it was self-inflicted. He was aware of that." Thereafter, Judge Connors denied the motion to open.[12]

On appeal, the defendant claims that Judge Connors abused her discretion by denying the motion to open and thereby did not give him the opportunity to prove that the plaintiff committed a fraud on the dissolution court.[13] We do not agree.

"Our review of a court's denial of a motion to open

[based on fraud] is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Mattson* v. *Mattson*, 74 Conn. App. 242, 244, 811 A.2d 256 (2002).

The standard by which we review the denial of a motion to open a judgment of dissolution was established by our Supreme Court in *Varley* v. *Varley*, 180 Conn. 1, 428 A.2d 317 (1980). "The question presented by a charge of fraud is whether a judgment that is fair on its face should be examined in its underpinnings concerning the very matters it purports to resolve. Such relief will only be granted if the unsuccessful party is not barred by any of the following restrictions: (1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different." Id., 3–4.

Our Supreme Court, however, abandoned the second *Varley* requirement regarding laches or diligence in discovering fraud in *Billington* v. *Billington*, 220 Conn. 212, 222, 595 A.2d 1377 (1991). In the present case, Judge Connors analyzed the defendant's claims of fraud under the fourth *Varley* factor, concluding that there was not a substantial likelihood that the result of a new trial would be different. See *Sousa* v. *Sousa*, 173 Conn. App. 755, 772, 164 A.3d 702 (defendant failed to demonstrate substantial likelihood that had plaintiff disclosed full value of pension in affidavit, as defendant claimed, result of new proceeding would be different), cert. denied, 327 Conn. 906, 170 A.3d 2 (2017); see also *Weinstein* v. *Weinstein*, 275 Conn. 671, 704, 822 A.2d 53 (2005); A. Rutkin et al., 8A Connecticut Practice Series: Family Law and Practice with Forms (3d Ed. 2010) § 52:7, p. 318.

In his appellate brief, the defendant laid out four arguments: Judge Connors improperly (1) considered the defendant's motion to open a substitute for an appeal of a claimed error, (2) concluded that the dissolution court did not find the plaintiff credible on her testimony of assault, (3) speculated that the dissolution court did not wait for the resolution of the criminal charges against the defendant to be resolved because

it did not think it was important, and (4) determined that there was no fraud on the dissolution court without holding an evidentiary hearing. The defendant's arguments lack merit as they misconstrue the court's decision.

Judge Connors did not consider the defendant's motion to open a substitute for an appeal of claimed error. By filing a motion to open, the defendant took a different route from an appeal to attack the dissolution judgment. Judge Connors recognized that no matter the legal theory, the underlying facts were the same. There was evidence before the dissolution court that the plaintiff had an extramarital relationship with another man, but the court did not find any direct evidence that the relationship was of a sexual nature. The dissolution court found multiple reasons why the parties' marriage had broken down and that there was fault on both sides. Importantly, the court did not find the defendant credible, particularly with respect to his finances, and noted that he had used the plaintiff's education fund to pay the debts of his business. The basis of the dissolution court's financial orders had to do in part with the specific facts related to the plaintiff, who had health issues at the time, was unemployed and was without an education or technical training necessary to find employment by which to support herself and to pay her share of child support. The court awarded the plaintiff five years of rehabilitative alimony.

In addition, there is no factual basis for the claim that Judge Connors improperly speculated that the dissolution court did not wait for a resolution of the assault charges against the defendant to be resolved before issuing a decision because the dissolution court did not think that those charges were important. Judge Connors explained to the defendant why it was not necessary for the criminal case to be resolved before the judgment of dissolution was rendered. She stated: "Judge Carbonneau had every right to say, I'm going to wait until those criminal charges are resolved if he thought it was that important. . . . So, if it was something that was really going to affect his outcome one—one way or another, if he felt he didn't have enough evidence, he could have waited until the outcome of your case and he didn't. So all of this information that is so troubling to you, and I can understand why. . . . And I can understand you're unhappy with this judgment, but . . . I think even if the things that you're saying were true, you would have likely had the exact same result, nothing would have changed and you have to sort of put it . . . behind you and move on. Particularly now because . . . like I said, Judge Carbonneau was aware, the Appellate Court was aware, the Supreme Court denied it. Sir, they're all aware . . . ." The dissolution court's responsibility was to determine why the marriage had broken down and how to divide the marital assets and to award alimony, if any. Judge Connors

understood the role of the dissolution court and balanced the allegations of fraud against the dissolution judgment.

During the hearing before Judge Connors, the defendant argued that the dissolution court relied on the plaintiff's alleged misrepresentation in rendering its award. The defendant claims in this court that Judge Connors improperly found that there was no fraud on the dissolution court and that it is highly likely that a new judgment will be different. When the dissolution court's memorandum of decision is read in its entirety, it is clear that the dissolution court knew that the plaintiff was not truthful about her relationship with another man and the alleged assault by the defendant. Most significantly, the dissolution court's decision indicates that the defendant knew of the plaintiff's affair at or about the time the plaintiff commenced the divorce action; see footnote 3 of this opinion; and that he knew the results of Bilotto's investigation of the alleged assault and what Bilotto found in the plaintiff's cell phone at the time of trial. The defendant's argument before Judge Connors and this court also falters because the cause of the breakdown of the marriage is only one of the factors the dissolution court must consider in making its financial orders, a statutory requirement this court made clear in resolving the defendant's appeal from the dissolution judgment. Not only were the parties a generation apart in age, but they also came from different religions, cultures, world experiences, and educations. An experienced judge knows how to weigh the factors enumerated in §§ 46b-81 and 46b-82 when dividing marital assets and awarding alimony. "[A] trial judge need not leave insights and common sense derived from her life's experience at the courthouse door." *Schimenti* v. *Schimenti*, 181 Conn. App. 385, 402, 186 A.3d 739 (2018).

The defendant's claim that the plaintiff perpetrated a fraud on the dissolution court fails as a matter of fact and law. Although the defendant correctly identified the elements of the tort of fraudulent misrepresentation; see footnote 9 of this opinion; there is no evidence that Judge Carbonneau relied on the plaintiff's alleged misrepresentations. Moreover, it is not the legal standard applicable to claims of fraud upon the court in dissolution actions. Our Supreme Court has concluded that "there is a distinction between fraud on the court and fraud on the adverse party in the context of a marital dissolution case." *Billington* v. *Billington*, supra, 220 Conn. 222. "[T]he concept of fraud on the court in the marital litigation context is properly confined to situations where both parties join to conceal material information from the court." Id., 225, citing *Baker* v. *Baker*, 187 Conn. 315, 322, 445 A.2d 912 (1982) (both parties to marital dissolution entered into agreement that "by its own terms specifically provided that it be concealed from the trial court"). The parties in the

present case did not conspire to conceal information from the dissolution court.

In addition to finding that the dissolution court was well aware of the defendant's claim that the plaintiff's alleged misrepresentations regarding her extramarital relationship with another man and the defendant's alleged physical assault, Judge Connors stated, without reference to authority, that it was "highly unlikely that whether [the plaintiff] was having sexual relations with [another man] or not, would have affected [the dissolution court's] decision at all." The dissolution court's memorandum of decision is replete with evidence that the dissolution court was aware of and had considered the plaintiff's relationship with another man and that the plaintiff was not credible with respect to her allegations that the defendant had assaulted her.[14]

On the basis of our thorough review of the record, we conclude that Judge Connors properly determined that the outcome of a new trial would not be different as the dissolution court had considered the equities in making its financial awards by ordering the defendant to repay the plaintiff her education fund that he had used to pay his business debts and by providing time limited, rehabilitative alimony to enable the plaintiff to acquire employable skills so that she might be in a position to help support herself and the parties' children. "In family matters, the court exercises its equitable powers. The balancing of equities is a matter which falls within the discretion of the trial court. . . . For that reason, equitable remedies are not bound by formula but are molded to the needs of justice." (Citation omitted.) *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 271–72, 540 A.2d 713 (1988).

On the basis of our thorough review of the record, we conclude that Judge Connors did not abuse her discretion in denying the defendant's motion to open. Even if the misrepresentations alleged by the defendant were credited, it is unlikely that the outcome of a new trial would be different.

The judgment is affirmed.

In this opinion, ALEXANDER, J., concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The plaintiff did not file an appearance in the present appeal. We have considered the claims raised in the appeal on the basis of the record and the defendant's brief and oral argument. See *Rosario* v. *Rosario*, 198 Conn. App. 83, 84 n.1, 232 A.3d 1105 (2020).

[2] The dissolution court, *Carbonneau, J.*, found that the defendant had left the marital residence just prior to the plaintiff's commencing the dissolution action.

[3] In a footnote in its memorandum of decision, the dissolution court noted that on May 19, 2015, the defendant commenced a custody/visitation action against the plaintiff in which he *accused her of adultery* and committing inappropriate acts in the presence of their children. The defendant did not pursue the allegations, and the court, *Morgan, J.*, dismissed the case on July 2, 2015.

The court also found that the parties' three minor children had been removed from the parties' care and were in the custody of the Commissioner

of Children and Families at the time of trial. As of December 10, 2018, the date the defendant's motion to open was heard, the children were still in the custody of the commissioner.

[4] This court dismissed as moot that portion of the defendant's appeal in which he challenged the dissolution court's order that, if the defendant obtains a monetary judgment against the plaintiff in a separate proceeding, it shall be considered a significant change in circumstances to warrant a review of the defendant's alimony obligation. *Conroy* v. *Idlibi*, supra, 183 Conn. App. 461 n.2.

[5] The trial court file discloses that, on January 13, 2019, Judge Connors granted a motion to modify alimony filed by the defendant and ordered him to pay the plaintiff $885 per week. On March 16, 2020, the court, *Caron, J.*, denied another motion to modify alimony filed by the defendant. In ruling on the motion to modify, Judge Caron found, among other things, that the plaintiff had remarried on June 4, 2020, and ruled that the defendant's alimony obligation ended on the date of the plaintiff's remarriage.

[6] Issues regarding the parties' children were reserved to the juvenile court, which was then considering the children's best interests. The dissolution court, however, retained jurisdiction over the cost of the children's postsecondary education pursuant to General Statutes § 46b-56c.

[7] The court ordered that its alimony order terminate upon the death of either party or the plaintiff's remarriage.

[8] The court also ordered the defendant not to share, post, distribute, broadcast or disseminate in any fashion nude images of the plaintiff or those of a sexual or sexualized nature and that he not direct or allow others to do so. The defendant also was ordered to return such images to the plaintiff's dominion and control and delete any such images on any electronic device in his dominion and control.

[9] The first twelve paragraphs of the defendant's motion to open are akin to a definitional preamble. In paragraph 5, the defendant stated in relevant part: "Fraud: consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. . . . *Billington* v. *Billington*, 220 Conn. 212, 217–18, 595 A.2d 1377 (1991)." As we point out in this opinion, the foregoing definition of fraud does not apply in cases of marital dissolution in which a fraud upon the court is alleged. See id., 222.

[10] Judge Connors stated during argument on another motion: "So, let's deal first with the—the motion to open is denied for the reasons that I have articulated."

[11] See *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 270, 540 A.2d 713 (1988) (postdissolution discovery not permitted unless party moving to open judgment substantiates allegations of fraud beyond mere suspicion).

[12] In his motion to open, the defendant made allegations of wrongdoing on the part of the plaintiff's counsel in certifying her answers to the defendant's interrogatories when the plaintiff had told him of her affair with another man and that counsel took no action to correct the plaintiff's testimony, which the defendant alleged was untruthful. The defendant sought to raise his claim against the plaintiff's counsel during the hearing before Judge Connors. Judge Connors informed the defendant that the trial court was not the appropriate venue in which to raise a claim of attorney misconduct.

[13] The defendant has raised eight issues on appeal. He claims that Judge Connors erred by (1) denying his motion to open, (2) considering "the appeal of a claimed error a substitute to the motion to open," (3) assuming the substantiation of fraud will not substantially change the judgment, (4) considering that the plaintiff was not found credible on her allegations of assault, (5) using speculation and conjecture, (6) denying the defendant's discovery to substantiate the plaintiff's allegations of fraud, (7) denying the defendant a postjudgment probable cause hearing, and (8) denying the defendant the opportunity to establish whether the allegations of fraud are sufficient to open the judgment.

[14] The dissolution court made the following findings of fact that defeat the defendant's assertion that the dissolution court was defrauded. On Wednesday, July 29, 2015, the plaintiff called the Plymouth Police Department to report that the defendant had forced his way into her presence and assaulted her. Bilotto was the lead detective on the case.

"Bilotto determined that [the] defendant sent the plaintiff three text mes-

sages prior to her 911 call at 6:19, 6:20 and 6:22 p.m. From these messages and the transcript of the 911 call, the detective concluded that the defendant was not in the same location as the plaintiff. He did not hear the defendant's voice on the 911 call. He heard a 'commotion,' but not screaming.

"Bilotto interviewed the plaintiff at the marital residence . . . . He found discrepancies between [the plaintiff's] verbal accounts of the incident to him and her 911 call. The plaintiff twice declined to answer his questions about the sequence of events on the night in question; once that night and later with her attorney present."

Bilotto "studied photos of the blood spatter on the floor where the injury was alleged to have occurred. He determined that the pattern was from a person in a stationary position and that this was inconsistent with the description of the incident given by the plaintiff."

"In the course of his lengthy investigation . . . Bilotto discovered a number of cell phone messages of a sexual nature between the plaintiff and [another man]. The plaintiff met [the man], currently age [sixty-four], at a bar. The children's then nanny . . . introduced them about a year prior to the plaintiff's filing for divorce on May 26, 2015. The plaintiff described [the man] as 'a friend' for about a year after they met. Their relationship changed at some point because the defendant confronted her with suggestive pictures he claimed she'd sent to [the man]. At least some of those pictures are in evidence before this court. The plaintiff denied a sexual relationship prior to the divorce filing with [the man] or anyone else in her sworn answers to the defendant's interrogatories dated February 29, 2016."

––––––––––––––––––––––––